| | |
|---|---|
| CHRISTOPHER P. BURKE, ESQ.<br>Nevada Bar No.: 004093<br>*atty@cburke.lvcoxmail.com*<br>218 S. Maryland Parkway<br>Las Vegas, Nevada 89101<br>(702) 385-7987<br>Attorney for Debtor | ECF Filed on 3/14/2020 |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In Re:<br><br>WILLIE N. MOON, and<br>ADNETTE M. GUNNELS-MOON<br><br>Debtors. | Case No.: 13-12466-MKN<br><br>Chapter 13<br><br>Date: April 15, 2020<br>Time: 2:30 p.m. |

**MOTION FOR CONTEMPT AGAINST RUSHMORE LOAN MANAGEMENT SERVICES FOR VIOLATION OF THE COURTS ORDER CONFIRMING PLAN #2 AGAINST CREDITOR, RUSHMORE LOAN MANAGEMENT SERVICES, LLC AND FOR ITS CONTINUING VIOLATION OF THE STAY AND DAMAGES FOR BOTH AND TO CONFIRM AVOIDANCE OF RUSHMORES SECOND MORTGAGE UNDER FRBP 5009(d)**

COMES NOW, Debtors, Willie N. Moon and Adnette M. Gunnels-Moon, jointly ("the Moons"), and files this Motion for Contempt for Violation of the Court Order Confirming Plan #2 against Creditor, Rushmore Loan Management Services, LLC. ("Rushmore") and for its Continuing Violation of the Stay and Damages for both and to Confirm Avoidance of Rushmores Second Mortgage under FRBP 5009(d).

**I**
**Facts[1]**

1.      The Moons filed a Chapter 13 bankruptcy on March 26, 2013. (ECF No. 1). The case was assigned to Chapter 13 panel trustee Rick A. Yarnall ("Trustee"). Attached to the Petition was a list of creditors and addresses ("Creditor Matrix") that included Rushmore Mortgage at one address: P.O. Box **82708**, Irvine, CA 92619. On the same date, the clerk's office issued a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines ("Bankruptcy Notice"). (ECF No. 3). The Bankruptcy Notice specified a deadline

---
1. These facts are taken directly from the Courts Memorandum Decision of February 25, 2020 (Dkt.#157)

1

of August 12, 2013, for general creditors to file proofs of claim, and an extended deadline for governmental entities. The Bankruptcy Notice was sent by first class mail to the creditors set forth on the Creditors Matrix. (ECF No. 9).

2    On May 6, 2013, Debtors filed their schedules of assets and liabilities, along with their statement of financial affairs. (ECF Nos. 14 and 17). On their real property Schedule "A," Debtors listed a personal residence ("Residence") having a value of $120,000 located at 3391 Eagle Bend Street, Las Vegas, NV 89122. On their Schedule "D," Debtors listed a second deed of trust against their Residence securing a claim in the amount of $73,000 in favor of Rushmore Mortgage at one address: P.O. Box **52708**, Irvine, CA 92619. On the same Schedule, Debtors listed a first deed of trust against their Residence securing a claim in the amount of $154,000 in favor of Chase Home Finance.

3.    On May 6, 2013, Debtors filed a proposed Chapter 13 Plan #1 ("Plan #1"). (ECF No. 18). Section 5.06 of Plan #1 provided that a holder "of a claim shall retain its lien until the earlier of (a) the payment of the underlying debt determined under non-bankruptcy law or (b) discharge under Section §1328… After either one of the foregoing events has occurred, creditor shall release its lien and provide evidence and/or documentation of such release within 30 days to Debtor(s)." Section 6.01 of Plan #1 provided that "Debtors intend to file a motion to value collateral and strip off the second deed of trust, in favor of Rushmore Mortgage, which encumbers their Residence at 3391 Eagle Bend Street, Las Vegas, NV 89122."

4.    On May 7, 2013, a notice was filed scheduling a hearing on confirmation of Plan #1 to be conducted on June 6, 2013 ("Plan #1 Confirmation Hearing Notice"). (ECF No. 19). On the same date, Debtors' counsel filed a certificate of service attesting that Plan #1 and the Plan #1 Confirmation Notice were served by first class mail to, *inter alia*, Rushmore Mortgage at two addresses: P.O. Box **82708**, Irvine, CA 92619, and 2020 Jackson Blvd., Suite 4, Rapid City, SD 57117. (ECF No. 20).

5.    On September 25, 2013, Debtors filed a motion to value the Residence ("Valuation Motion"). (ECF No. 29). On the same date, a notice was filed scheduling a hearing on the Valuation Motion to be heard on November 7, 2013 ("Valuation Hearing Notice"). (ECF No. 30). The Valuation Motion sought a determination, *inter alia*, that Rushmore Mortgage had only an unsecured claim under Section 506(a) because the value of the Residence did not exceed the claim of Chase Home Finance that was secured by the first deed of trust. As a result, Rushmore Mortgage's claim would be reclassified under the Chapter 13 plan as an unsecured claim.

6. On September 26, 2013, Debtors' counsel filed a certificate of service attesting that the Valuation Motion and Valuation Hearing Notice were sent by certified mail, return receipt requested, to Rushmore Mortgage, Attn: Officer, Managing or General Agent, to the following four addresses: P.O. Box **82708**, Irvine, CA 92619; 1508 Mount Rushmore Road, Rapid City, SD 57702; 2020 Jackson Blvd., #4, Rapid City, SD 57702; and 1220 Mount Rushmore Road, Rapid City, SD 57702. (ECF No. 32).

7. On December 5, 2013, an order was entered granting the Valuation Motion ("Valuation Order")(ECF No. 34). The Valuation Order provided that the claim of Rushmore Mortgage was classified from a secured claim to an unsecured claim and would receive pro rata payment along with other general unsecured creditors.

8. On December 12, 2013, Debtors' counsel filed a notice of entry of the Valuation Order ("Valuation Order Notice") along with a certificate of service. (ECF Nos. 36 and 37). The certificate of service indicates that the Valuation Order Notice was sent by first class mail to Rushmore Mortgage at two addresses: P.O. Box **82708**, Irvine, CA 92619; and 2020 Jackson Blvd., Suite 4, Rapid City, SD 57702.

9. On February 12, 2014, Debtors filed an amended Chapter 13 Plan #2 and a notice of confirmation hearing. (ECF Nos. 39 and 40). Neither document was served.

10. On February 14, 2014, Debtors again filed an amended Chapter 13 Plan #2 ("Plan #2") and a notice of confirmation hearing ("Plan #2 Confirmation Hearing Notice"). (ECF Nos. 42 and 43). The confirmation hearing was noticed to be held on March 27, 2014. The certificate of service filed by Debtors' counsel indicates that Plan #2 and the Plan #2 Confirmation Hearing Notice were served by first class mail on Rushmore Mortgage at two addresses: P.O. Box **82708**, Irvine, CA 92619, and 2020 Jackson Blvd., Suite 4, Rapid City, SD 57702. (ECF No. 45).

11. On April 7, 2014, an order was entered confirming Plan #2 ("Plan #2 Confirmation Order"). (ECF No. 49). Section 2.12.2 of Plan #2 provided for a prepetition arrearage in the amount of $517.51 to secured creditor Wilmington Trust National Association, apparently as successor in interest to Chase Home Finance, to be paid through the plan. Section 5.06 of Plan #2 provided that a holder "of a claim shall retain its lien until the earlier of (a) the payment of the underlying debt determined under non-bankruptcy law or (b) discharge under Section §1328... After either one of the foregoing events has occurred, creditor shall release its lien and provide evidence and/or documentation of such release within 30 days to Debtor(s)." As a result of completing plan payments, the Debtors would receive a discharge of their prepetition unsecured debts, including the debt owed to Rushmore, and could retain their Residence by maintaining their loan payments to the

3

holder of the first deed of trust. Section 6.01 of Plan #2 provided that "Debtors have filed a motion to value collateral and strip off the second deed of trust, in favor of Rushmore and the motion was duly granted."

12. On May 5, 2014, the Trustee sent notice of a proposed distribution to creditors ("Distribution Notice"), including a payment of $0.00 to Rushmore Mortgage at one address: P.O. Box **82708**, Irvine, CA 92619. (ECF No. 51).

13. On May 7, 2014, the Trustee filed a certificate of service indicating that the Distribution Notice was sent by first class mail to Rushmore Mortgage to two addresses: P.O. Box **82708**, Irvine, CA 92619, and 2020 Jackson Blvd., Suite 4, Rapid City, SD 57702. (ECF No. 53).

14. On July 13, 2016, the Trustee filed a final account and report ("Final Account") indicating that $0.00 had been paid to Rushmore. (ECF No. 64).

15. On July 14, 2016, the Trustee filed a certificate of service indicating that a copy of the Final Account was sent by first class mail to Rushmore Mortgage at two addresses: P.O. Box **82708**, Irvine, CA 92619, and 2020 Jackson Blvd., Suite 4, Rapid City, SD 57702. (ECF No. 65).

16. On August 19, 2016, the Trustee filed a final report indicating, *inter alia*, that all Chapter 13 plan payments had been made over thirty-eight months and that Rushmore had a scheduled unsecured claim of $73,000 for which it had been paid $0.00. (ECF No. 68).

17. On August 27, 2016, Debtors filed an amended certificate of compliance with Chapter 13 discharge conditions ("Discharge Compliance Certificate"). (ECF No. 74). On the same date, Debtors filed a certificate of service indicating that a copy of the Discharge Compliance Certificate was sent by first class mail to Rushmore Mortgage at two addresses: P.O. Box **82708**, Irvine, CA 92619, and 2020 Jackson Blvd., Suite 4, Rapid City, SD 57702. (ECF No. 75).

18. On September 28, 2016, an order of discharge of the Debtors after completion of Chapter 13 plan payments ("Discharge Order") was entered. (ECF No. 76).

19. On September 30, 2016, a certificate of notice was filed indicating that the Discharge Order had been entered. (ECF No. 77). That certificate indicates that notice was given by first class mail to Rushmore Mortgage at two addresses: P.O. Box **82708**, Irvine, CA 92619, and 2020 Jackson Blvd., Suite 4, Rapid City, SD 57702.

20. On October 3, 2016, a final decree was entered closing the case. (ECF No. 78). On January 4, 2019, Debtors filed an ex parte motion to reopen the bankruptcy case through new counsel ("Ex Parte Reopening Motion"). (ECF No. 79). On the same date, an

4

order was entered reopening the case. (ECF No. 81).

21. On January 7, 2019, a certificate of service was filed indicating the Ex Parte Reopening Motion was served by first class mail to Rushmore Loan Management, Attn: Managing Agent, at two addresses: P.O. Box **62708**, Irvine, CA 92619, and 15480 Laguna Canyon Road, Suite 100, Irvine, CA 92618. (ECF No. 82). On the same date, an amended certificate of service was filed indicating that the Ex Parte Reopening Motion was served by first class mail to Rushmore Loan Management, Attn: Managing Agent, at four addresses: P.O. Box **52708**, Irvine, CA 92619, 15480 Laguna Canyon Road, Suite 100, Irvine, CA 92618, P.O. Box 51707, Los Angeles, CA 90015-4707, and P.O. Box 55604, Irvine, CA 92619-5004. (ECF No. 83).

22. On January 18, 2019, Debtors filed the instant Contempt Motion seeking to hold Rushmore Loan Management ("Rushmore") in contempt for violation of the automatic stay arising under Section 362(a) and for violation of the discharge injunction arising under Section 524(a)(2). (ECF No. 84). The motion also seeks to hold SN Servicing Corporation ("SNS") in contempt for violation of the discharge injunction. Attached to the Contempt Motion are twentysix separately marked exhibits, including a declaration of Willie N. Moon. Based on the alleged violations, Debtors seek actual damages, including emotional distress, in addition to punitive damages, as well as the recovery of their attorney's fees. Debtors noticed their Contempt Motion to be heard on February 20, 2019. (ECF No. 85). Debtors' new counsel filed a certificate of service indicating that the Contempt Motion and notice of hearing were served by first class mail to Rushmore Loan Management Services LLC, Attn: Managing Agent, at 15480 Laguna Canyon Road, Suite 100, Irvine, CA 92618. The certificate also indicates that the Contempt Motion and notice of hearing were served by first class mail on Rushmore at three addresses: P.O. Box **52708.** Irvine, CA 92619; P.O. Box 51707, Los Angeles, CA 90015-4707; and P.O. Box 55604, Irvine, CA 92619-5004. It also indicates that SNS was served by first class mail.Irvine, CA 92619; P.O. Box 51707, Los Angeles, CA 90015-4707; and P.O. Box 55604, Irvine, CA 92619-5004. It also indicates that SNS was served by first class mail.

23. On February 8, 2019, a request for special notice on behalf of Rushmore was filed by the law firm of McCarthy & Holthus, LLP ("M&H Firm"). (ECF No. 89). On the same date, a response to the Contempt Motion was filed by the M&H Firm, indicating, *inter alia*, that Rushmore needed at least 45 days to research and substantively respond. (ECF No. 90).

24. On February 13, 2019, Debtors filed a reply indicating that they did not object to an allowance of time for Rushmore to file its substantive response to the Contempt

5

Motion. (ECF No. 91).

25. On February 20, 2019, an initial hearing was conducted on the Contempt Motion, at which counsel appeared for the Debtors, Rushmore, and SNS. At the initial hearing, an evidentiary hearing on the Contempt Motion was scheduled for September 16 and 17, 2019 ("Evidentiary Hearing"). Various deadlines were set for the submission of declarations, exhibits, and additional briefs, as well as the submission of documents to the courtroom deputy prior to the evidentiary hearing.

26. On March 6, 2019, an order was entered scheduling the Evidentiary Hearing and memorializing the various deadlines agreed to at the initial hearing on the Contempt Motion. (ECF No. 94).

27. On March 15, 2019, a motion to withdraw as counsel for the Debtors was filed by their original bankruptcy counsel and noticed to be heard on April 18, 2019. (ECF Nos. 97 and 98).

28. On March 28, 2019, Rushmore filed a substitution of counsel for the law firm of Akerman LP ("Akerman Firm") to represent it in place of and instead of the M&H Firm in the instant proceeding. (ECF No. 102).

29. On April 15, 2019, an order was entered approving the substitution of counsel for Rushmore. (ECF No. 103).

30. On May 9, 2019, an order was entered granting the motion to withdraw filed by the Debtors' original bankruptcy counsel. (ECF No. 104).

31. On May 17, 2019, Debtors filed a motion to compel Rushmore to respond to certain discovery that had been propounded on February 8, 2019, to the M&H Firm. (ECF No. 106). By stipulation, the hearing on the motion was continued to July 10, 2019. (ECF No. 110)

32. On June 24, 2019, Rushmore filed a motion for a protective order regarding certain Rushmore manuals setting forth its bankruptcy policies and procedures from 2013 to 2017. (ECF No. 113).

33. On July 9, 2019, a stipulated protective order was entered to place the Rushmore manuals under seal. (ECF No. 116).

34. On July 29, 2019, a stipulated order was entered withdrawing the Contempt Motion as to SNS. (ECF No. 118 and 119).

35. On August 27, 2019, Debtors filed copies of the declarations in support of the Contempt Motion. (ECF No. 120).

36. On August 28, 2019, the Akerman Firm filed a motion to continue the Evidentiary Hearing. (ECF No. 121).

37. On August 29, 2019, an order was entered granting Rushmore's request to have their continuance motion heard on an emergency basis. (ECF No. 123).

38. On September 4, 2019, Rushmore filed an Adversary.

39. On September 4, 2019, Debtors filed an opposition to the continuance motion. (ECF No. 127).

40. On September 5, 2019, Rushmore filed a reply in support of its continuance motion. (ECF No. 128).

41. On September 5, 2019, Debtors filed their trial brief in support of the Contempt Motion ("Debtors' Trial Brief"). (ECF No. 129).

42. On September 6, 2019, Rushmore filed the affidavit of its proposed witness in opposition to the Contempt Motion, along with its list of witnesses and exhibits. (ECF Nos. 130 and 131).

43. On September 7, 2019, an order was entered denying the continuance motion because, *inter alia*, the date of the Evidentiary Hearing had been known since February 20, 2019, and Rushmore had ample opportunity to conduct discovery. (ECF No. 132).

44. On September 10, 2019, Debtors filed a motion in limine seeking to strike Rushmore's proposed witness, witness list and exhibits. (ECF No. 135).

45. On September 11, 2019, an order was entered granting Debtors' request to have the motion in limine heard on an emergency basis. (ECF No. 139).

46. On September 13, 2019, Rushmore filed an opposition to the motion in limine. (ECF No. 143).

47. On September 13, 2019, an order was entered denying Debtors' motion in limine. (ECF No. 145).

48. The Court held a two day evidentiary hearing on September 16th and 17th, 2019.

49. On February 25, 2020 in this Courts Memorandum Decision, granted the Moon's Motion for Contempt(Dkt.#157).

50. And also on February 25, 2020 this Court entered its Order on the Moon's Motion (Dkt.#158).

## II

## Argument

**A. Rushmores is in contempt of the confirmed plan by not releasing its lien.**

For its failure, this Court can sanction Rushmore under two legal theories, its inherent authority and §105.

### 1. The Court has inherent contempt authority to sanction violations of a court order.

In *Chambers v. NASCO*, Inc., 501 U.S. 32, 42-47 (1991), the Supreme Court held that Article III courts have an "inherent authority" to sanction "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so. In *In re Rainbow Magazine*, Inc., 77 F.3d 278, 284 (9th Cir.1996), the Ninth Circuit held that bankruptcy courts, like district courts, also possess that inherent power. *See also In re FJ Hanshaw Enterprises Inc*, 244 F.3d 1128 (9th Cir. 2001) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders."). The inherent authority derives not from statutory grants but rather from the very creation of the court (unless Congress intentionally restricts those powers). *In re Dyer*, 322 F.3d 1178, 1189-90 (9th Cir. 2003); *See also In re Cano*, 410 B.R. 506 (Bankr. S.D. Texas 2009)(Bankruptcy Courts have both inherent contempt authority and equitable authority under §105. The two are not indistinguishable. The former is inherent to all courts, while the latter is rooted in statute). Thus, bankruptcy courts have inherent civil contempt authority independent of any statute or rule. *Jove Eng'g, Inc., v. IRS,* 92 F.3d 1539, 1553 (11th Cir. 1996). Pursuant to its inherent civil contempt authority, bankruptcy courts may enforce its own orders, *see id.; In re Matthews,* 184 B.R. 594, 598 (Bankr. S.D. Ala. 1995), and issue sanctions for noncompliance. See *Bessette v. Avco Fin. Services, Inc.,* 230 F.3d 439, 445 (1st Cir. 2000). Here, Rushmore had 30 days to release its lien after confirmation of the Moons plan (Dkt. #49, p.5 Sec. 5.06 ). That was on April 7, 2014. It did not.

In the alternative, even if Rushmore argues it did not have notice back then, if the 30 days is calculated from when Rushmore states it first received notice, and entered the case. i.e. February 8, 2019, Rushmore still failed to release its lien. Now, more than a year later, the Moons seek an order holding Rushmore in contempt for not complying with this courts order confirming plan no.2. Further, to compel Rushmore to now release its lien, because it appears it still has not released its lien on the Moons home. Thus, interfering with their ability to refinance their property. Even if Rushmore has, or does release its lien,

damages should ensue for its unacceptable delay.

### 2. The Court has contempt authority under Section 105 to sanction Rushmore for not complying with its Court order.

In addition to its inherent civil contempt powers, bankruptcy courts also have statutory civil contempt authority under 11 U.S.C. §105(a) to enforce the provisions of the Bankruptcy Code and its own orders. See *In re Dyer*, 322 F.3d 1178, 1189-90 (9th Cir. 2003); *Bessette*, 230 F.3d at 445; *see also In re Fatsis,* 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009). Section 105(a) provides for the issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996) (noting that "[t]here can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court" as recognized by the statutory grant of power to the bankruptcy courts under 11 U.S.C. §105(a)).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media,* 179 F.3d 1228, 1239 (9th Cir. 1999). If it cannot, the bankruptcy court clearly has discretion to impose sanctions under section 105(a). *Bennett* at 1069.

The focus "is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Dyer* 322 F.3d at, 1191, citing *Hardy* at 1390. "Because civil contempt serves a remedial purpose it matters not with what intent the defendant did the prohibited act." *Dyer* at 1191. "[T]he threshold questions regarding the propriety of an award turns **not** on a finding of 'bad faith' or subjective intent, but rather on a finding of willfulness' ". *Id* at 1191. Here, for the same reasons that the Court can sanction Rushmore under its inherent authority, it can also sanction Rushmore under §105.

### 3. Various Forms Of Sanctions and Damages Are Available To This Court To Compensate the Moons And Coerce Rushmore To Comply With Its Order.

The civil contempt powers under §105(a) empower this Court to sanction the offending party. Such sanctions "must either be compensatory or designed to coerce compliance." *Dyer*, 322 F.3d at 1192; *See also: Am. Airlines Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 585 (5th Cir.2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into

9

compliance with the court's order, and to compensate the complaint for losses sustained."). As explained in *Dyer*, the sanctions associated with civil contempt include, compensatory damages, attorney fees, and the offending creditor's compliance. *Id.* at 1193 (citing *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002). *Dyer* also concluded that "relatively mild noncompensatory fines" might be necessary under some circumstances, and within the Court's inherent power, but ultimately rejected any ability for imposition of "serious" punitive sanctions. *Id.* at 1194-95.

The contempt authority conferred on bankruptcy courts is a *civil* contempt authority. As such, it authorizes only *civil* sanctions as available remedies. *Dyer*, 322 F.3d at 1191. The Ninth Circuit has explained the difference between civil sanctions and criminal sanctions: Civil penalties must either be compensatory or designed to coerce compliance. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137-38 (9th Cir.2001). Compensatory civil sanctions include actual damages such as attorneys fees, costs and emotional distress. *See In re Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004). Coercive sanctions are used to coerce or compel compliance with court orders and should be awarded to the party, as opposed the court. *See F.J. Hanshaw*, 244 F.3d at 1138; *See also Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827-34 (1994)*; In re Harris*, 312 B.R. 591 (N.D. Miss. 2004); *In re Sanchez*, 372 B.R. 289 (Bankr. S.D. Tex. 2007) (Section 105(a) gives the court power to sanction a creditor charging undisclosed and improper fees); *In re Rizzo Cheverier*, 364 B.R. 532 (Bankr. S.D.NY 2007). Further, this court can award mild non-compensatory damages or issue proposed findings and a recommended judgment on punitive damages to the district court or refer the matter to the district court for criminal contempt proceedings, large compensatory damages and forward those to the District Court for approval. *In re Marino*, 577 BR 772, 789 (9th Cir. BAP 2017).

**4. The Moons are entitled to damages and attorneys fees.**

"In a civil contempt proceeding, a monetary sanction, assessed for the purpose of compensating the complainant for losses sustained by reason of the contemnor's acts, is within the universe of permissible sanctions. Thus, make-whole relief is a commonplace sanction in civil contempt. So too are. . . attorney's fees and costs". *Goya Foods, Inc. v. Wallach Mgmt. Co.* 290 F.3d 63, 78 (1st Cir. 2002). Here, the Moons should be awarded damages and attorneys fees.

**5. Rushmores failure to release its lien is a continuing stay violation.**

In addition, the Moons Pre Trial Brief argued Rushmore's stay violation was continuing (Dkt.#129, p.8, ln. 12-25, p.9, ln.1-27, p.10, ln.1-24). It states: "A creditor also violates the automatic stay by failing to take affirmative action to halt the effect of its

10

violation. Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the stay. *In re Wagner,* 74 BR 898, 904 (Bankr. E.D.Pa. 1987). A creditor takes the risk of being assessed damages if he fails to obtain clarification from the bankruptcy court. *In re Clark*, 49 BR 704, 707 (Bankr. D. Guam. 1985). Many courts have held, it is incumbent on a creditor to take the necessary steps to halt or reverse any pending collection efforts and thereby, maintain, or restore the status quo as it existed at the time of the filing of the bankruptcy petition. Even "if [the stay] has been violated prior to receipt of actual notice the burden is on the creditor to *reverse* any such action taken in violation of the stay." *In re Smith,* 180 BR 311, 319 (Bankr. N.D. Ga. 1995)". (Dkt.#129, p.11, ln.12-25). The Moons now add, that even if Rushmore has released its lien by the time this motion is filed, its violation continued to that date. And it affected Mrs. Moons ability to refinance.

The Moons Pretrial Brief went on to state: " The responsibility is placed on the creditor because 'to place the onus on the debtor . . . to take affirmative steps . . . would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the breathing spell from his creditors illusory' ". *Roche* at 621. "Courts find a violation of the stay based on an act of *omission* when a creditor fails to cure a previous violation of the stay or otherwise restore the states quo." *In re Bilfield*, 494 BR 292, 301 (Bankr. N.D. OH. 2013). The *Bilfield* court rejected the innocence argument of a creditor who hired a process server that served a subpoena upon the debtor in violation of the stay. The creditor had an affirmative obligation to instruct its agent to stand down. *Id.* at 305. Here, despite actual knowledge Rushmore took no steps to cease calling and mailing collection letters to the Moons.

It would result in a significant waste of judicial resources and "the automatic stay . . . would be frustrated if the debtor had to involve the court in each situation as here. It would continuously involve the court in pointless and needless litigation. . . it should not be the court that should stop the snowball." *In re Baldwin*, 1996 WL 33401577*3 (Bankr.C.D. Ill. 1996). "A creditor sets in motion the process. [The] [c]reditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the 'continuation' is to be stayed, it cannot chose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the creditor is necessary so that continuation is stayed" *In re Elder,* 12 BR 491, 494-95 (Bankr. M.D. Ga. 1981)(Dkt.#129, p.12, ln.1-23). Here, Rushmore took no action.

11

In addition, the Moons Pre-trial Brief noted, "a willful violation can also be found based on an act of *omission*. *In re Banks*, 253 BR. 25, 31 (Bankr. E.D. Mich. 2000). Courts have been quick to realize that a creditors *inaction* can often be just as disruptive to the debtor as are affirmative collection efforts. *In re Miller*, 22 BR 479, 481 (Bankr. D. Md. 1982). "In other words, the entire scenario was created, produced and directed by Creditor", so it was the party that needed to act. *In re Daniels,* 316 BR 342, 348-49 (Bankr. D. ID. 2004)". (Dkt.#129, p.12, ln.24-26 and p.13, ln.1-4). In fact, Rushmore took no action to curtail its collection actions upon being informed of the Moons bankruptcy. It was only after servicing was transferred to SN Servicing Corporation that the onslaught stopped.

Further, Moons Pre-Trial Brief pointed out, that "[e]ven, after the Moons discharge, Rushmore's stay violations carried over and continued, because it *never* corrected its earlier violations. The Ninth Circuit has held, that Debtors may continue to experience the consequences of a stay violation even *after* the stay has expired. *In re Snowden*, 769 F3 651, 659 and 662 (9th Cir. 2014), *aff'g* 422 B.R. 737 (Bankr. W.D. Wash. 2010). A creditor's failure, after they became aware of the Debtors bankruptcy filing and resulting stay, to take affirmative steps to stop its actions also constitutes a "willful" violation of the stay under 11 U.S.C. §362(k)(1). *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1212, (9th Cir. 2002). For this reason, a stay violation exists *until* remedied, even after the underlying bankruptcy case is resolved. *40235 Washington Street Corpt. v. Lusardi*, 329 F.3d 1076 (9th Cir. 2003). Thus, because Rushmore has *never* acknowledged it violated the stay in the first place, it amounted to a continuing violation. In fact, the Moons have been *required* to pursue litigation and hire an expert to establish that the violation was willful and to obtain damages. *Snowden*, 769 F.3d at 659. See also *In re Schwartz*, 954 F.2d 569, 573." (Dkt.#129, p.13, ln.1-20). Thus, Rushmore's stay violation did not end until this Court ruled on the trial, i.e. February 25, 2020.

In *Snowden* the Ninth Circuit has held, that if a creditor requires a Court to determine that the stay was violated and does, the violation is continuing until that point. *Id* at 659. Here, Rushmore "oppose[d] Debtors Motion" and "prays . . . That Debtors Motion for Order to Show Cause be denied . . ." (Dkt.#90, p.2, ln.7, 11-12). Thus, the Court had to determine that Rushmore violated the stay during the Moons bankruptcy via an evidentiary hearing. (Dkt. #157, p. 59, ln. 11). Thus, Rushmore's stay violation *continued* through the Moons discharge on September 16, 2016 until February 25, 2020. So, additional damages should be awarded for that time period. Especially, because this was the time period that affected Mrs. Moon the most, emotionally and in her attempted refinance.

### 6. In accordance with FRBP 5009(d) this Court should confirm that Rushmore's Lien was Avoided

Finally, FRBP 5009(d), which became effective on December 1, 2017, provides that if a claim in a Chapter 13 case is secured by property of the bankruptcy estate, the debtor may request the bankruptcy court to enter an order declaring that the claim has been satisfied and the lien has been released under the terms of the confirmed plan. In this case, Section 5.06 of Plan #2 required Rushmore to release its lien within 30 days after the Debtors received their discharge. It did not.

In bankruptcy, exemptions and values are determined at the time a petition is filed. Here, Rushmore's second mortgage was completely undersecured at the time the Moons filed their case and when they avoided its lien. Thus, because it is now too late for Rushmore to do anything about its lien, as the numbers have been etched in stone, this Court should confirm its earlier lien avoidance.

## III

## Conclusion

It is clear, that Rushmore Loan Management Services, LLC, violated this Courts order by not releasing its lien within 30 days of confirmation. Or at the latest within 30 days of its appearance in this case. Therefore, this is a case which warrants the imposition of sanctions, damages and an award of attorney's fees, under §105, the courts inherent authority or §362(k).

WHEREFORE, the Debtor respectfully requests an order;
1. That Rushmore violated a Court order, the confirmed plan;
2. Sanctioning Rushmore under §362, §105(a) or its inherent authority in an amount to be determined at a hearing;
3. Awarding the Moons emotional distress damages in an amount to be determined at a hearing;
4. Awarding Debtor attorney fees and costs §362, §105(a) or its inherent authority in an amount to be determined in a hearing;
5. Holding that Rushmore's stay violation continued until this Court ruled on February 25, 2020;
6. Awarding Debtor actual damages and costs in an amount to be determined in a hearing;
7. Holding a separate hearing on sanctions, actual damages, emotional distress damages, punitive damages, and attorney fees;

8. Confirming that Rushmore's lien was avoided;

9. Any other relief deemed just and proper.

DATED this 14th day of March 2020.

RESPECTFULLY SUBMITTED:

/S/CHRISTOPHER P. BURKE, ESQ.
CHRISTOPHER P. BURKE, ESQ.
218 S. Maryland Parkway
Las Vegas, Nevada 89101
(702) 385-7987