1  Cami M. Perkins, Esq., Nevada Bar No. 9149
   **Howard & Howard Attorneys PLLC**
2  3800 Howard Hughes Parkway, Suite 1000
   Las Vegas, NV 89169
3  Telephone: (702) 257-1483
   Facsimile: (702) 567-1568
4  E-Mail: cp@h2law.com

5  *Attorneys for Kathleen Prasad and Anjani Shandill*

6                    **DISTRICT COURT**

7               **CLARK COUNTY, NEVADA**

8  KATHLEEN PRASAD, an individual, and       CASE NO.: A-22-851495-C
   ANJANI SHANDILL, an individual,           DEPT NO.: 29
9
           Plaintiffs,
10                                           **PLAINTIFFS' EMERGENCY *EX PARTE***
                                             **(WITH NOTICE) APPLICATION FOR**
11         vs.                               **TEMPORARY RESTRAINING ORDER**
                                             **AND, AFTER HEARING,**
12 RAUL TARIN NEVAREZ, an individual, and    **APPLICATION FOR PRE-JUDGMENT**
   OFELIA TARIN, an individual,              **WRIT OF ATTACHMENT**
13                                           **ON ORDER SHORTENING TIME**
           Defendants.
14

15         Plaintiffs, Kathleen Prasad and Anjani Shandil ("Plaintiffs"), by and through their

16 counsel, Howard & Howard Attorneys, PLLC, hereby file this Emergency *Ex Parte* (With

17 Notice) Application for Temporary Restraining Order and, After Hearing, Application for Pre-

18 Judgment Writ of Attachment on Order Shortening Time (this "Application").   By this

19 Application, Plaintiffs seek to enjoin the disbursement of Defendants' (sellers') proceeds in

20 Equity Title's escrow account until further order of the Court or alternatively, to enjoin

21 Defendants from utilizing any funds disbursed to them from the sale of the Property.  Thereafter,

22 Plaintiffs request that the Court hold a hearing on Plaintiffs' request that the Court issue a writ

23 of attachment and determine an amount that should be attached until the final resolution of the

24 parties' respective damages in this matter, which should happen in short order. Attached to this

25 Application as Exhibit 6 is the proposed Temporary Restraining Order.

26

27

28

                                      1

4885-3922-0327, v. 1

This Application is based on the pleadings and papers on file herein, the following Memorandum of Points and Authorities, the exhibits attached hereto, the Declaration of Cami Perkins, Esq., and any argument of counsel that the Court may entertain at the time of any hearing on this Application.

**DECLARATION OF CAMI M. PERKINS IN SUPPORT OF EMERGENCY *EX PARTE* (WITH NOTICE) APPLICATION FOR TEMPORARY RESTRAINING ORDER AND, AFTER HEARING, APPLICATION FOR PRE-JUDGMENT WRIT OF ATTACHMENT ON ORDER SHORTENING TIME**

I, Cami M. Perkins, Esq., hereby declare under penalty of perjury and state as follows:

1.      I am a licensed Nevada attorney practicing with the law firm of Howard & Howard Attorneys, PLLC, which represents Kathleen Prasad and Anjani Shandil ("Plaintiffs") in this case.

2.      I am over eighteen (18) years of age and have personal knowledge of the facts set forth herein. If called to do so, I would competently and truthfully testify to all matters set forth herein, except for those matters stated based upon information and belief.

3.      I make this declaration in support of Plaintiffs' Emergency *Ex Parte* (With Notice) Application for Temporary Restraining Order and, After Hearing, Application for Pre-Judgment Writ of Attachment on Order Shortening Time (the "Application").

4.      This dispute arose out of a Residential Purchase Agreement (the "Agreement") that the parties executed related to the sale of Defendants' home located at 36 Vallejo Verde Street, Henderson, Nevada 89052 (the "Property") to Plaintiffs. *See* Order Granting Plaintiffs' Motion for Summary Judgment at ¶ 4, on file herein (the "MSJ Order").

5.      The Agreement was signed by the parties on January 17, 2022. Pursuant to the Agreement, the parties agreed that the transaction shall be closed on March 31, 2022. The only time requirement was that the transaction close on March 31, 2022. *Id*. at ¶ 5.

6.      The Agreement specifically sets forth the parties' obligations to be undertaken to ensure closing on the Property was effectuated on March 31, 2022, including the signing of closing documents. *Id*. at ¶ 6.

7.      The Agreement likewise sets forth specific remedies available to the Plaintiffs in the event of Defendants' breach of its terms. The Agreement provides, in relevant part:

2

4885-3922-0327, v. 1

**XXI. Seller's Default**. Buyer may elect to treat this Agreement as cancelled, in which case all Earnest Money paid by Buyer hereunder shall be returned and Buyer may recover such damages as may be proper, **or Buyer may elect to treat this Agreement as being full force and effect and Buyer shall have the right to specific performance or damages, or both**.

*Id*. at ¶ 8.

8.      Prior to or on March 31, 2022, Plaintiffs secured funding and a loan to facilitate their purchase of the Property. On March 31, 2022, Plaintiffs executed the closing documents. *Id*. at ¶¶ 11-14.

9.      Thereafter, Defendants still did not executed the closing documents and as a result, Plaintiffs filed the instant case. *Id*. at ¶ 16.

10.      At the commencement of the case, on May 4, 2022, Plaintiffs served an Offer of Judgment on Defendants pursuant to NRCP 68 (the "OOJ") agreeing to dismiss this action in exchange for Defendants' execution of the Closing Documents (as defined in the Complaint) required by Equity Title and payment of the sum of $12,000 to Plaintiffs no later than May 15, 2022 due to the interest rate lock expiration which would cause Plaintiffs additional damages.  A true and correct copy of the Offer of Judgment served on Defendants is attached as Exhibit 1 to the Application.  Defendants did not accept the Offer of Judgment.

11.      Plaintiffs proceeded to prosecute this action, including taking the deposition of Wendy Shaw of Equity Title (the escrow officer overseeing the transaction), taking the deposition of Myles Zomok (the loan officer assisting Plaintiffs in obtaining and closing on their loan to purchase the Property), taking the deposition of Defendant Ofelia Tarin, propounding extensive written discovery, and responding to written discovery propounded by Defendants.

12.      In addition to discovery, there was substantial motion practice involved in this case and their correspondence hearings, including: (i) Defendants' Application for Prejudgment Attachment and/or Injunctive Relief; (ii) Motion to Dismiss for Plaintiffs not Timely Posting Bond; (iii) Motion to Expunge Lis Pendens; (iv) Plaintiffs' Motion for Protective Order/Strike Objections to Answer/Responses to Interrogatories and Requests for Production of Documents and Sanctions; (v) Motion to Stay Justice Court Proceedings; (vi) Competing Motions for

3

1  Summary Judgment; (vii) Motion for Writ of Prohibition; and (viii) Motion to Increase Bond for

2  Prejudgment Attachment.

3     13.    In addition to all of the foregoing, as the Court is aware, there were simultaneous

4  proceedings in the Henderson Justice Court which started in June of 2022 after this action was

5  commenced, was denied, and then brought again as an unlawful detained in January of 2023 and

6  ultimately granted by the Henderson Justice Court.  *See* Amended Emergency Motion to Stay

7  Justice Court Proceedings on Order Shortening Time, on file herein.  That order is currently on

8  appeal before Department 4 of this Court.  *See* Case No. A-23-868032-A.

9     14.    After discovery closed in this matter, Plaintiffs moved for summary judgment on

10  their two causes of action for (i) specific performance; and (ii) breach of contract.  This Court

11  granted Plaintiffs' Motion for Summary Judgment in its entirety, concluding that "Plaintiffs have

12  established that they are entitled to specific performance as a matter of law. The Agreement has

13  definite and certain terms. Monetary damages alone are inadequate given that the Agreement is

14  for the sale of real property. In addition, the Agreement specifically provides for the remedy of

15  specific performance in the event of Sellers' breach. Plaintiffs tendered performance, were ready,

16  willing, and able to perform on March 31, 2022, and the Court is therefore willing to order it."

17  *See* the MSJ Order at ¶ 25, on file herein.

18     15.    This Court further concluded that (i) Plaintiffs established that the Agreement is a

19  valid, legally enforceable contract; (ii) Plaintiffs have established that they tendered performance

20  under the Agreement and performed all obligations necessary to close on the Property on March

21  31, 2022; (iii) Plaintiff has also proven that the closing did not occur on March 31, 2022 because

22  Defendants' did not sign the closing documents despite being put on notice by the Buyer that the

23  documents were ready for their signature and Equity Title was clear to close; and (iv) therefore

24  Defendants breached the explicit terms of the Agreement.  *Id*. at ¶¶ 27-28.

25     16.    Accordingly, the Court ordered that (i) Plaintiffs' request for Specific Performance

26  is granted; (ii) Plaintiffs shall have until June 3, 2023 to close on the Property; (iii) both Plaintiffs

27  and Defendants must act in good faith and in a reasonably prudent manner to facilitate the closing

28  of the transaction on the Property before June 3, 2023; and (iv) after the expiration of June 3,

HOWARD & HOWARD ATTORNEYS PLLC

4

4885-3922-0327, v. 1

1   2023, the parties may make separate applications requesting and proving their damages related to

2   this case, attorneys' fees and costs. *Id.* at p. 7.

3       17.    As of June 1, 2023, everything is in order for Plaintiffs to close on the Property on

4   June 2, 2023. *See* Declaration of Myles Zomok, a true and correct copy of which is attached to

5   the Application as Exhibit 2.

6       18.    Plaintiffs have conducted an extensive analysis of their damages related to this

7   case, attorneys' fees and costs in preparation for their application to be submitted to the Court

8   after June 3, 2023 per the MSJ Order.

9       19.    As the Court and the world is aware, interest rates have risen dramatically in the

10  past fourteen (14) months. As of March 31, 2022 (the original closing date), Plaintiffs' interest

11  rate on their loan to purchase the Property was locked at 5.0%. *Id.* The current interest rate

12  available to Plaintiffs is 7.625%, which even requires the lender to charge two basis points to get

13  to that rate. Over the life of a 30-year fixed loan, the amount of interest to be paid equates to

14  $280,668, plus two basis points of $9,425 for a total of $290,094.

15      20.    I worked extensively with the lender to find any way possible to get the interest

16  rate lower and comparable to the interest rate Plaintiffs had locked when they were set to the

17  purchase the Property on March 31, 2022. The only way for Plaintiffs to obtain a lower interest

18  rate would be to "buy down" the rate, and the lowest rate available even with such a buy-down is

19  5.5%. *See* Declaration of Myles Zomok, a true and correct copy of which is attached to the

20  Application as Exhibit 2.

21      21.    The cost to buy down the rate was and has been extremely difficult for my clients

22  to come up with, but ultimately they were able to only as a result of the lender agreeing to defer

23  some of the lender's own closing fees until the time in which Plaintiffs have moved for their

24  damages before this Court. *Id.*

25      22.    The lender, in an attempt to also be creative, came up with an alternative solution

26  wherein the Sellers (Defendants) could have credited Plaintiffs at closing in an amount of up to

27  six percent (6%) of the purchase price. I explained the situation to Defendants' counsel, with the

28  explanation of why I believed Defendants would be responsible for Plaintiffs' damages incurred

HOWARD & HOWARD ATTORNEYS PLLC

5

4885-3922-0327, v. 1

in connection with buying down the rate.

23.    I explained to opposing counsel that it was necessary to buy-down the rate to place Plaintiffs in a position as close as possible to the position they were in as of March 31, 2022 and that the seller (Defendants) could give a credit at closing equal to $28,800 to assist with the costs. I further explained that if the rate is not bought down, the damages would be enormous and outlined them and that my explanation was being given to help mitigate Defendants' exposure on the damages.  In response, Defendants' counsel informed me that "You don't have a claim for damages and specific performance - you get one or the other" (despite the plain language in the Agreement stating that Buyer shall have the right to specific performance or damages, <u>or both</u>) and further informed me that Defendants "will not be offering or helping your client with anything related to the closing costs or financing" and later to "save it – this will be handled in litigation" when referring to my attempt to further explain the rationale. A true and correct copy of the correspondence attempting to reason with Defendants pertaining to the damages is attached to the Application as <u>Exhibit 3</u>.

24.    Although Plaintiffs have been able to come up with the funds to buy down the rate to 5.5%, they are nonetheless having to pay **$26,614** more than what was required for them to pay to close on the Property on March 31, 2022.

25.    In addition, Plaintiffs' attorneys' fees since Defendants' rejection of the OOJ exceed $150,000 and costs are approximately $4,000.  Plaintiffs will be filing their Application for fees and costs after the closing occurs.

26.    Based on the preliminary title report on the Property, Defendants have an existing mortgage of approximately $171,000, depending on whether they have paid that mortgage down since the time it was obtained.  A true and correct copy of the Preliminary Title report on the Property is attached as <u>Exhibit 4</u> to the Application.  This means that the proceeds to Seller will be approximately $304,000, which should be sufficient to satisfy the amount of Plaintiffs' damages plus their attorneys' fees and costs if awarded by the Court pursuant to the OOJ and NRCP 68. Further, as the Court is aware, Defendants have been ordered to pay Plaintiffs $14,339 in attorneys' fees no later than July 3, 2023.  *See* Order Affirming and Modifying Discovery

HOWARD & HOWARD ATTORNEYS PLLC

6

4885-3922-0327, v. 1

Commissioner's Report and Recommendations dated April 28, 2023, on file herein.

27.    By Defendants' own Declarations produced in this litigation and representations by their counsel, Defendants have no money and the proceeds derived from the sale of the Property will likely be the only source of funds by which Plaintiffs will be able to satisfy any judgment. *See* Motion to Dismiss for Failure to Post Bond at p. 6, one file herein.[1]  Based on a review of Defendants' assets, their only assets are their existing home (which is homesteaded) and the Property.

28.    Pursuant to NRS 31.013, after notice and hearing, the court may order the clerk to issue a writ of attachment in an action upon a judgment for the direct payment of money if the judgment is not a lien or the contract is not secured by a mortgage.  Further, a writ of attachment may be ordered in any other case where the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered.

29.    Here, Plaintiffs have already won summary judgment and granted specific performance and prevailed on their breach of contract claim.  They simply need to prove their damages but per the MSJ Order, could not bring their Application for Damages (or for attorneys' fees and costs) until after the June 2, 2023 closing which is set to happen tomorrow.  Now that Plaintiffs are certain that they will close, and they are certain as to the at least the minimum amount of their damages, and Defendants outright rejected any offer by Plaintiffs to allow Defendants to mitigate those damages, there is no question that Plaintiffs will have a judgment in very short order.  This will be in addition to their existing judgment of $14,339 per the Order Affirming and

---

[1] Defendants Motion states:
"Defendants the Tarins have had to put their live-in home on the market for sale because they cannot keep up with two mortgages, living expenses, and attorney's fees."
"Mr. Tarin also has health problems which Plaintiffs are aware of, and this financial situation is putting more strain on him to the dangerous point."
"They have had to pull from their savings and are frayed by having to maintain home for them to live in, the home for Prasad to live in for free, and for their own attorney."
*See* Motion to Dismiss at p. 6, on file herein.

*also see* Exhibit A attached to Motion to Dismiss at paragraph 4 "We have had to put our primary house up for sale to be able to pay our bills and our attorney and to pay for health issues with Raul. This entire process has put so much stress on us that his cardiac condition is getting worse and he has to start seeing a specialist."

4885-3922-0327, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

1    Modifying Discovery Commissioner's Report and Recommendations dated April 28, 2023, on

2    file herein.

3        30.    Plaintiffs were required to remove their lis pendens on the Property in order to

4    close on the Property and therefore did so on May 31, 2023. *See* Notice of Release of Lis Pendens

5    filed on May 31, 2023, on file herein. Because the Closing is set to occur on June 2, 2023 and the

6    parties will be moving for their respective damages immediately thereafter, it is imperative that

7    the Sellers' proceeds remain in Equity Title's escrow account so that any damages awarded to

8    Plaintiffs can be collected against such proceeds. Plaintiffs have no other security to ensure that

9    they will be able to collect their $14,339, their damages, or their attorneys' fees and costs.

10       31.    Plaintiffs recognize that Defendants claim they are entitled to rent not paid by

11   Plaintiffs during the pendency of this action in an amount that has changed continuously by

12   Defendants throughout this litigation. Plaintiffs' counsel requested from Defendants' counsel an

13   itemization of the amounts paid by Defendants during this litigation in connection with the

14   Property, including any mortgage payments, insurance, property taxes, etc. in order to attempt to

15   itemize any unjust enrichment damages (if any). It is Plaintiffs' position that Plaintiffs were the

16   equitable owners of the Property from the time Defendants breached the Agreement, which

17   position will be set forth in detail in the Application for Damages. In any case, Plaintiffs have

18   already posted a bond with the Court in the amount of $25,000 which more than covers any

19   amount that would be possible due to Defendants even at the rental rate existing as of March 31,

20   2023 ($1,300 per month).

21       32.    Based on the fact that there will not be sufficient time to have a hearing prior to

22   the June 2, 2023 closing, it is necessary to file the Application *Ex Parte* to enjoin any of the Seller

23   proceeds from being disbursed to Defendants as set forth above and as set forth in the Application.

24       33.    Without a temporary restraining order, Plaintiffs will be irreparably harmed

25   because even though Plaintiffs have secured a judgment via the MSJ Order, they are not allowed

26   to pursue their monetary damages or attorneys' fees and costs (or their $14,339 already awarded),

27   which are substantial, until after the June 2, 2023.

28       34.    Plaintiffs needed to wait to bring this Application to be 100% sure that they were

HOWARD & HOWARD ATTORNEYS PLLC

8

4885-3922-0327, v. 1

in fact closing on June 2, 2023 before asking this Court for this type of relief.

35.    Plaintiff is providing notice of the Application concurrently herewith to Defendants.

36.    Pursuant to NRCP 65(b), any temporary restraining order granted without written or oral notice to the adverse party or that party's attorney shall expire by its terms within such time after entry, not to exceed 15 days, as the Court fixes.  If the Court grants Plaintiffs' request for an *Ex Parte* Temporary Restraining Order, even though notice is being provided to Defendants, it may have expired if the Application for Pre-Judgment Writ of Attachment is heard in due course.  Plaintiffs therefore request that the Application for Pre-Judgment Writ of Attachment be heard on shortened time pursuant to EDCR 2.26 for a date in which the Court's schedule allows prior to the date in which the Temporary Restraining Order expires.

37.    This Declaration and the Application are made in good faith, not for the purpose of delay, and in compliance with NRCP 65(b) and EDCR 2.26.

DATED: June 1, 2023.

*/s/ Cami M. Perkins*
CAMI M. PERKINS

## ORDER SHORTENING TIME

Good cause appearing, **IT IS HEREBY ORDERED**, that the foregoing **APPLICATION FOR PRE-JUDGMENT WRIT OF ATTACHMENT ON ORDER SHORTENING TIME** shall be heard on the _____ day of _____, 2023, at the hour of _____ am/pm.

Dated: _____    _____

EIGHTH JUDICIAL DISTRICT COURT JUDGE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs filed this instant lawsuit against Defendants to

9

4885-3922-0327, v. 1

collect damages resulting from Defendant's failure to pay for its use of Red Rock's equipment, for damages caused by Defendant to Red Rock's equipment, and for damages caused due to the loss of use of the equipment while it was being repaired.

To the best of Plaintiffs' knowledge, Defendants' only significant remaining asset that could go towards satisfying any portion of the judgment of the $14,339 currently owed by Defendants to Plaintiffs and the likely additional judgment in a six-figure amount that will be entered in favor of Plaintiffs in this matter is the seller's proceeds derived when the Property closes. Accordingly, in order to maintain the status quo, this Court should respectfully issue a temporary restraining order, enjoining the disbursement of seller's proceeds in Equity Title's escrow account until further order of the Court or alternatively, enjoining Defendants from utilizing any funds disbursed to them from the sale of the Property. Thereafter, Plaintiffs request that the Court hold a hearing on Plaintiffs' request that the Court issue a writ of attachment and determine an amount that should be attached until the final resolution of the parties' respective damages in this matter.

## II.    STATEMENT OF FACTS

In the interest of time and respect for judicial economy, Plaintiffs incorporate herein by reference the facts set forth in the Declaration of Cami M. Perkins in Support of Emergency Ex Parte (With Notice) Application for Temporary Restraining Order and, After Hearing, Application for Pre-Judgment Writ of Attachment on Order Shortening Time, *supra*.

## III.   ARGUMENT

### A.    The Court Should Grant Plaintiff's Application for Temporary Restraining to Maintain the Status Quo the Parties' Damages are Determined.

The Court should issue a temporary restraining order enjoining the disbursement of seller's proceeds in Equity Title's escrow account until further order of the Court or alternatively, enjoining Defendants from utilizing any funds disbursed to them from the sale of the Property.

10

The issuance of an injunction is a well-settled remedy in Nevada. Under state statute, injunctive relief is ordinarily granted when the following are shown:

1.     When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

2.     When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.

3.     When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.

NRS § 33.010; *see also* NRCP 65.

The Nevada Supreme Court, in interpreting this otherwise straightforward statute, set forth that injunctive relief is appropriate where the plaintiff establishes (1) that it is likely to suffer irreparable harm in the absence of preliminary relief, (2) that it is likely to succeed on the merits, (3) that the balance of hardships tips in its favor, and (4) that an injunction is in the public interest. *See Univ. and Cmty. College Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004). Here, Plaintiffs meet each of these elements for immediate injunctive relief.

### 1.     Plaintiffs Will Be Irreparably Harmed Absent Emergency Relief

Injunctive relief is proper where irreparable harm would result from the inability to collect a money judgment. *See In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994) ("We join the majority of circuits in concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant…."); *Airlines Reporting Corp. v. Barry*, 825 F.2d 1220, 1227 (8th Cir. 1987); *Tri-State Generation and Transmission Ass'n. Inc. v. Shosone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) ("If Tri-State cannot collect a money judgment, then failure to enter the preliminary injunction would irreparably harm it.");

4885-3922-0327, v. 1

*Boston Athletic Assn. v. Int'l Marathons, Inc.*, 392 Mass. 356, 362-63, 467 N.E.2d 58 (1984) (the potential inability to collect damages has sufficed to entitle a plaintiff to "a preliminary injunction which did no more than preserve the status quo.").

Here, Plaintiffs already won, yet they were the ones who were required to post the $25,000 bond early in this litigation but had to wait in order to obtain any relief in this case first by way of specific performance (which is happening on June 2, 2023) and then by way of proving their damages ($14,338 of which have already been awarded).

Defendants' counsel has stated on multiple occasions that her clients are in dire financial straits (of course blaming Plaintiffs for their predicament). *See* Defendants' Motion to Dismiss, on file herein.[2] But even if Defendants weren't, there is no question that Defendants will make it impossible for Plaintiffs to collect their damages if the seller proceeds from the sale of the Property are not maintained and the status quo kept pending the determination of the parties' respective damages. Plaintiffs' damages are substantial – all of the additional closing funds they were forced to come out of pocket in order to close beyond what they did in March of 2022 due to the increased interest rate. On top of that, even though Defendants know they are responsible for these damages, they refused to even attempt to be reasonable and apply a seller credit at closing, instead, trying to make it as difficult as possible for Plaintiffs to come up with the cash to close. Defendants knew that Plaintiffs' cash previously slated for the March 31, 2022 closing is tied up in the $25,000 bond posted with the Court.

The Property is Defendant's only significant asset with equity and the proceeds from it will be the only method in which Plaintiffs will be able to collect. Thus, if Defendants are

---

[2] Defendants Motion states:
"Defendants the Tarins have had to put their live-in home on the market for sale because they cannot keep up with two mortgages, living expenses, and attorney's fees."
"Mr. Tarin also has health problems which Plaintiffs are aware of, and this financial situation is putting more strain on him to the dangerous point."
"They have had to pull from their savings and are frayed by having to maintain home for them to live in, the home for Prasad to live in for free, and for their own attorney."
*See* Motion to Dismiss at p. 6, on file herein.

*also see* <u>Exhibit A</u> attached to Motion to Dismiss at paragraph 4 "We have had to put our primary house up for sale to be able to pay our bills and our attorney and to pay for health issues with Raul. This entire process has put so much stress on us that his cardiac condition is getting worse and he has to start seeing a specialist."

12

4885-3922-0327, v. 1

permitted to collect the proceeds from the sale of the Property prior to a determination of the damages, even though Plaintiffs have obtained summary judgment and succeeded in this action, they will not be able to collect upon any judgment that they obtain in this lawsuit. Accordingly, there is a serious threat of irreparable harm to Plaintiffs, and the entry of temporary restraining order and thereafter a pre-judgment writ of attachment is necessary and proper to ensure that Plaintiffs can collect upon a money judgment against Defendants.

**2.      Plaintiffs are Likely to Succeed on Their Claims for Relief**

Plaintiffs have already prevailed on summary judgment on both of their claims. They won outright, that is not contested. The only remaining question is the amount of Plaintiffs' damages, and whether Defendants have any claim for unjust enrichment and if so, the amount of Defendants' damages. Respectfully, if Defendants do have any claim for unjust enrichment against Plaintiffs, it is minimal and should consist solely of what they are out of pocket – mortgage, taxes, insurance, etc. They are not entitled to a windfall as a result of breaching the Agreement. The law does not hold anything other than Defendants being made whole, and even that is arguable and will be addressed in further briefing.

Although Plaintiffs were awarded Specific Performance, they are still entitled to damages both under the Agreement and under well-settled law. *See* Agreement at Section XXI:

> **XXI. Seller's Default**. Buyer may elect to treat this Agreement as cancelled, in which case all Earnest Money paid by Buyer hereunder shall be returned and Buyer may recover such damages as may be proper, **or Buyer may elect to treat this Agreement as being full force and effect and Buyer shall have the right to specific performance or damages, or both**.

*See Stoltz v. Grimm*, 100 Nev. 529, 534 (1984); 689 P.2d 927, 930 (stating "In granting specific performance of a contract, a court of equity may award monetary compensation as incidental relief where specific performance does not by itself afford complete relief. *Fleischer v. Buccilli*, 13 Mich.App. 135, 163 N.W.2d 637 (1967). Where a purchaser of land is awarded specific performance of the purchase contract, he or she is entitled to an allowance for the losses occasioned by the vendor's delay in conveying the property. *Miller v. Talbott*, 239 Md. 382, 211 A.2d 741, 748 (1965).)

**3.      The Equities and Public Interest Favor Immediate Relief.**

13

4885-3922-0327, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

1    In granting a preliminary injunction, courts often "weigh the potential hardships to the

2    relative parties, and others, and the public interest." *Univ. and Cmty. College Sys. of Nev. v.*

3    *Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004). "As a practical matter,

4    if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it

5    almost always will be the case that public interest will favor the plaintiff." *American Tel. and Tel.*

6    *Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 n.8 (3rd Cir. 1994).

7    There is no dispute that Plaintiffs have demonstrated a likelihood of success on the merits

8    – they won summary judgment, are closing on the Property tomorrow, and they've suffered

9    damages.  Further, the made the OOJ which was unreasonably rejected and will very likely be

10    awarded a substantial portion, if not all, of their attorneys' fees and costs.  Their irreparable injury

11    has also been established – Defendants and their counsel have admitted they are broke.  The seller

12    proceeds from the closing are going to be the only way Plaintiffs can collect.  Plaintiffs are also

13    simple people who "bet the farm" on prevailing in this litigation because they were right and knew

14    they were entitled to specific performance and were not going to be bullied by Defendants.

15    Defendants thought that they could renege on their contractual obligations and they lost.  Plaintiffs

16    will suffer significant and permanent hardship if the Defendants obtain the sale proceeds and

17    Plaintiffs are unable to execute on their current monetary judgment and their eventual likely

18    significant monetary judgment. Defendants, on the other hand, will suffer no hardship as the

19    request is simply that the funds be held and everything be maintained status quo pending a

20    resolution, which will happen in very short order.  Defendants are further protected because

21    Plaintiffs have already posted a $25,000 bond with the Court, and Defendants owe Plaintiffs over

22    $14,000 which is not disputed per this Court's order. The public interest's is served in ensuring

23    that parties who play by the rules in litigation are able to ultimately collect, especially in

24    circumstances like this.

25            **4.    The Bond Already Posted Should Qualify as the Bond or Only a**

26                    **Nominal Bond ($500) Should Be Required.**

27    Issuance of a temporary restraining order for short period of time until the Court

28    determines the actual respective damages will not harm Defendants.  Defendants have already

HOWARD & HOWARD ATTORNEYS PLLC

14

enjoined the benefit of tying up $25,000 of Plaintiffs' funds throughout this entire litigation, which was likely improper as noted by this Court at the last hearing. The temporary restraining order seeks only to preserve the status quo and will therefore not result in any danger to the Defendants. As such, the bond already posted should qualify as the bond or alternatively, only a nominal bond should be required

**B.      After Notice and a Hearing, Plaintiffs are Entitled to a Pre-Judgment Writ of Attachment.**

NRS 31.013 states that a writ of attachment may issue under the following circumstances:

> NRS 31.013    Issuance of writ of attachment after notice and hearing.    The court may after notice and hearing, order the clerk to issue a writ of attachment in the following cases:
>
>    1.    In an action upon a judgment or upon a contract, express or implied, for the direct payment of money:
>
>        (a)  If the judgment is not a lien upon or the contract is not secured by mortgage, lien or pledge upon real or personal property situated in this state; or
>
>        (b)  If such lien or security has, without any act of the plaintiff or the person to whom the security was given, become valueless or insufficient in value to secure the sum due the plaintiff, in which case the attachment shall issue only for the unsecured portion of the amount due the plaintiff, which is equal to the excess of the amount due the plaintiff above the value of the security.
>
>    2.    In any case where the attachment of the property of the defendant is allowed pursuant to this chapter or other provision of law.
>
>    3.    In any other case where the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered.

In Nevada, a prejudgment writ of attachment is only available in certain actions, including an action upon a contract for the direct payment of money, but only if the contract "is not secured by mortgage, lien or pledge upon real or personal property situated in this state." NRS

HOWARD & HOWARD ATTORNEYS PLLC

15

4885-3922-0327, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

31.013(1)(a). A prejudgment writ of attachment is also available "where the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered." NRS 31.013(3).

The application for writ of attachment must include an affidavit including the following:

(a) Set forth clearly the nature of the plaintiff's claim for relief and that the same is valid.

(b) Set forth the amount which the affiant believes the plaintiff is entitled to recover from the defendant, and if there is more than one plaintiff or more than one defendant, the amount the affiant believes each plaintiff is entitled to recover or the amount that the plaintiff is entitled to recover from each defendant.

(c) Describe in reasonable and clear detail all the facts which show the existence of any one of the grounds for an attachment without notice to the defendant.

(d) Describe in reasonable detail the money or property sought to be attached and the location thereof if known.

(e) If the property sought to be attached is other than money, set forth to the best knowledge and information of the affiant, the value of such property less any prior liens or encumbrances.

(f) Name all third persons upon whom a writ of garnishment in aid of the writ of attachment will be served.

(g) In an action upon a foreign judgment attach a copy of the judgment to the affidavit for attachment as an exhibit.

(h) State whether, to the best information and belief of the affiant, the money or property sought to be attached is exempt from execution.

NRS 31.020(1). At the hearing on the order to show cause why the writ of attachment should not be issued, the court must "make a determination of the probable validity of the plaintiff's underlying claim against the defendant." NRS 31.026. In order to establish the probable validity of the underlying claim, "the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." *Blastrac*, 678 F. Supp. 2d at 1005; *see also Coombs v. Heers*, 366 F. Supp. 851, 853 (D. Nev. 1973)

4885-3922-0327, v. 1

(acknowledging the identical California statute and adopting the California Court of Appeals' interpretation). The plaintiff must also show that the defenses raised are "less than fifty percent likely to succeed." *Blastrac*, 678 F. Supp. 2d at 1005.

A writ of attachment is a form of injunctive relief. Injunctions are issued to protect a party from irreparable injury. *See Ottenheimer v. Real Estate Division*, 91 Nev. 338, 535 P.2d 1284 (1975). The goal and purpose of injunctive relieve is to preserve the status quo or to "preserve a business or property interest." *Guion v. Terra Mktg. of Nevada, Inc.*, 90 Nev. 237, 240, 523 P.2d 847, 848 (1974). The Court can award injunctive relief pursuant to NRS 33.010, which factors as set forth above, *supra*.

In compliance with NRS 31.020(1), attached to this Application as <u>Exhibit 5</u> is the Declaration of Plaintiff Kathleen Prasad which sets forth the following:

(a) Plaintiffs' claim for relief for Specific Performance and Breach of Contract and that the same is valid, as evidenced by the Order Granting Summary Judgment;

(b) (i)that the amount Plaintiffs are entitled to recover from Defendants is at a minimum, the difference between the amount required for Plaintiffs to close on the Property on June 2, 2023 and what would have been required on March 31, 2022, including, but not limited to, the amount required to buy down the current interest rate plus additional closing costs (i.e. an additional appraisal that was required to be obtained); plus (ii) Plaintiffs' reasonable attorneys' fees and costs which are estimated to be approximately $155,000.

(c) Notice is being provided to Defendants of the attachment request;

(d) The money sought to be attached are the seller proceeds which will be held in escrow from the sale of the Property at Equity Title of Nevada;

(e) The property sought to be attached is money;

(f) The third persons upon whom the writ of garnishment in aid of the writ will be served is Equity Title of Nevada, Attention Wendy Shaw; Attention Marilyn Fine.

(g) There is no action upon a foreign judgment.

4885-3922-0327, v. 1

(h) To the best information and belief of the affiant, the money or property sought to be attached is not exempt from execution.

Further, as set forth above, Plaintiffs have already established their strong likelihood of prevailing on this matter – they HAVE prevailed.  Second, they have established irreparable harm as set forth above because Defendants will undoubtedly make it impossible for Plaintiffs to collect their judgment for damages when determined by the Court in short order.

Pursuant to NRS 31.013(3), as demonstrated herein, "extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered." Interest rates rose significantly, and while incurring substantial legal fees having to pursue this action with no cognizable defense, Plaintiffs did so and prevailed.  And even while having to post a $25,000 bond and "bleed money" uncontrollably. If any situation called for "extraordinary" circumstances, this would be the one. Defendants failed in their scheme to get out selling the Property to Plaintiffs and need to pay the price.  Plaintiffs should be made whole and the only way is to allow Plaintiffs to purchase the Property (which the Court did) and give them the opportunity to establish their damages and thereafter rightfully collect them.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs seek to enjoin the disbursement of Defendants' (sellers') proceeds in Equity Title's escrow account until further order of the Court or alternatively, to enjoin Defendants from utilizing any funds disbursed to them from the sale of the Property.  Thereafter, Plaintiffs request that the Court hold a hearing on Plaintiffs' request that the Court issue a writ of attachment and determine an amount that should be attached until the final resolution of the parties' respective damages in this matter, which should happen in short order. Attached to this Application as Exhibit 6 is the Proposed Temporary Restraining Order.

/ / /

HOWARD & HOWARD ATTORNEYS PLLC

4885-3922-0327, v. 1

DATED this 1st day of June, 2023.

HOWARD & HOWARD ATTORNEYS PLLC

/s/ CAMI M. PERKINS
Cami M. Perkins, Esq. (9149)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169

*Attorney for Plaintiffs/Counter-defendants*

## CERTIFICATE OF SERVICE

I hereby certify I served the foregoing **PLAINTIFFS' EMERGENCY EX PARTE (WITH NOTICE) APPLICATION FOR TEMPORARY RESTRAINING ORDER AND, AFTER HEARING, APPLICATION FOR PRE-JUDGMENT WRIT OF ATTACHMENT ON ORDER SHORTENING TIME** in this action with the Clerk of the Court via the Odyssey E-File and Serve System, which will cause this document to be served to the following parties below:

Shawanna L. Johnson, Esq.
LAW OFFICES OF SHAWANNA L. JOHNSON
3311 S. Rainbow Blvd., Ste. 144
Las Vegas, NV 89146
sjohnson@sljlaw702.com
*Attorney for Defendants/Counterclaimants*

DATED: June 1, 2023.

/s/ Victoria Agunos
An employee of **Howard & Howard Attorneys PLLC**

4885-3922-0327, v. 1

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 1



Cami M. Perkins, Esq., Nevada Bar No. 9149
Kaila E. Patrick, Esq., Nevada Bar No. 15616
**Howard & Howard Attorneys PLLC**
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone:  (702) 257-1483
Facsimile:  (702) 567-1568
E-Mail: cp@h2law.com; kep@h2law.com

*Attorneys for Plaintiffs Kathleen Prasad and Anjani Shandill*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| KATHLEEN PRASAD, an individual, and ANJANI SHANDILL, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>RAUL TARIN NEVAREZ, an individual, and OFELIA TARIN, an individual,<br><br>Defendants. | CASE NO.: A-22-851495-C<br>DEPT NO.: 17<br><br><br>**OFFER OF JUDGMENT** |

TO: Raul Tarin Nevarez and Ofelia Tarin

TO: Their attorneys of record.

        PLEASE TAKE NOTICE pursuant to the provisions of NRCP 68 and NRS 17.117, Plaintiffs, Kathleen Prasad and Anjani Shandill ("Plaintiffs"), by and through their counsel of record, Howard & Howard Attorneys PLLC, hereby make this Offer to Compromise this claim as follows:

        1.        Wherein a judgment of dismissal with prejudice shall be entered as to all claims by Plaintiffs, Kathleen Prasad and Anjani Shandill, in the above-entitled action, in exchange for Defendants' execution of the Closing Documents (as defined in the Complaint) required by Equity Title (as defined in the Complaint) to close on the Property (as defined in the Complaint) and payment of the sum of Twelve Thousand Dollars ($12,000) to Plaintiffs at the Closing (as defined in the Complaint) from escrow proceeds no later than May 15, 2022 (due to the interest rate lock expiration which will cause Plaintiffs additional damages).

HOWARD & HOWARD ATTORNEYS PLLC

1          This Offer to Compromise is made for the purposes specified in NRCP 68 and NRS 17.117

2    and is only as a compromise between said parties. This Offer is not intended to be, nor should it

3    be construed as an admission Defendants is/are liable in this action, or the Plaintiffs are entitled

4    to relief, including, but not limited to, an award of damages, attorneys' fees, costs, or interest.

5    Further Defendants waive no defenses by virtue of this Offer.

6          This Offer is made with the following conditions:

7         1.    This Offer is conditioned upon the acceptance by all parties to whom the Offer is

8    directed;

9         2.    This Offer includes a waiver by Defendants of any rights they may have to recover

10   costs, attorneys' fees or interest against Plaintiffs;

11        3.    If accepted, dismissal with prejudice shall be executed and filed in lieu of any

12   judgment;

13        4.    Upon acceptance, Plaintiffs will execute a stipulation to dismiss this matter as to

14   Defendants with prejudice; and

15        5.    This Offer is conditioned on acceptance in its entirety.

16        This Offer will expire fourteen (14) days after the date of its service upon Defendants.

17   DATED: May 4, 2022.         **HOWARD & HOWARD ATTORNEYS PLLC**

18

19            By: */s/ Cami M. Perkins*

20            Cami M.Perkins, Esq.
         Nevada Bar No. 9149

21            Kaila E. Patrick, Esq.
         Nevada Bar No. 15616

22            3800 Howard Hughes Parkway, Suite 1000
         *Attorneys for Plaintiffs*

23

24

25

26

27

28

HOWARD & HOWARD ATTORNEYS PLLC

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 2



## DECLARATION OF MYLES ZOMOK PLAINTIFFS' EMERGENCY *EX PARTE* (WITH NOTICE) APPLICATION FOR TEMPORARY RESTRAINING ORDER AND, AFTER HEARING, APPLICATION FOR PRE-JUDGMENT WRIT OF ATTACHMENT ON ORDER SHORTENING TIME

1.      I have personal knowledge of the matters set forth in this Declaration, except as to those matters stated on information and belief, which matters I believe to be true.  I make this Declaration in support of Plaintiffs' Emergency *Ex Parte* (With Notice) Application for Temporary Restraining Order and, After Hearing, Application for Pre-Judgment Writ of Attachment on Order Shortening Time

2.      I was the loan officer on the loan procured by Plaintiffs in connection with their purchase of 36 Vallejo Verde Steet, Henderson, NV 89012 (the "Property").  I have been a loan officer for approximately for eight (8) years, the last three (3) years of which I have been a branch manager for Supreme Lending, the mortgage company which funded the loan obtained by Plaintiffs to close on the Property on March 31, 2022 in the amount $456,000 (the "Original Loan").

3.      I have been in active contact with Plaintiffs and gathered the necessary documents to ensure funding of a new loan to close on the Property no later than June 3, 2023 (the "New Loan").  Everything is set for the New Loan to close on June 2, 2023.

4.      When Plaintiffs initially procured the Original Loan, the applicable interest rate for the Original Loan was approximately 2.5% less than the current interest rate under the same circumstances (i.e. credit score, borrowers having the same jobs, etc.).

5.      Interest rates have risen dramatically in the past fourteen (14) months.  As of March 31, 2022 (the original closing date), Plaintiffs' interest rate on their loan to purchase the Property was locked at 5.0%.  The current interest rate available to Plaintiffs is 7.625%, which even requires the lender to charge two basis points to get to that rate.  Over the life of a 30-year fixed loan, the amount of additional interest to be paid (compared to the previous interest rate of 5.0% equates to $280,668, plus two basis points of $9,425 for a total of $290,094.

6.     I have worked extensively with Plaintiffs and their counsel, Cami Perkins, to find any way possible to get the interest rate lower and comparable to the interest rate Plaintiffs had locked when they were set to the purchase the Property on March 31, 2022.  The only way for Plaintiffs to obtain a lower interest rate would be to "buy down" the rate, and the lowest rate available even with such a buy-down is 5.5%.

7.     I am aware that the cost to buy down the rate was and has been extremely difficult for Plaintiffs to come up with, but ultimately they were able to as a result of the lender agreeing to defer some of the lender's own closing fees until the time in which Plaintiffs have moved for their damages before the Court.  This amount was over $9,000 and very generous and non-customary for a lender to do, but the lender was willing to do so under the circumstances given the importance of this closing.

8.     The lender, in an attempt to also be creative, came up with an alternative solution wherein the Sellers (Defendants) could have credited Plaintiffs at closing in an amount of up to six percent (6%) of the purchase price.  I discussed this scenario extensively with Plaintiff's counsel, Cami Perkins, and reviewed the correspondence sent to Defendants' counsel by her.  I do not understand any justification from a seller's standpoint for not agreeing to the seller's credit proposed if the seller is responsible for making the buyer whole.

9.     I declare under penalties of perjury under the laws of the state of Nevada that the foregoing is true and correct.

DATED this 1st day of June, 2023.

/s/ Myles Zomok
_____
MYLES ZOMOK

## Cami M. Perkins

| | |
|---|---|
| **From:** | Myles Zomok <myles.zomok@yahoo.com> |
| **Sent:** | Thursday, June 1, 2023 4:35 PM |
| **To:** | Cami M. Perkins |
| **Subject:** | Re: Declaration |

**CAUTION:** EXTERNAL EMAIL

Authorized to use my electronic signature

On Thursday, June 1, 2023 at 04:32:09 PM PDT, Cami M. Perkins <cperkins@howardandhoward.com> wrote:



**Cami M. Perkins**
Attorney and Counselor

3800 Howard Hughes Pkwy, STE 1000, Las Vegas, NV 89169
**D:** 702.667.4855 | **C:** 702.810.4132 | **F:** 702.567.1568
cperkins@howardandhoward.com | Bio | vCard | LinkedIn

**NOTICE:** Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 3



**Cami M. Perkins**

| | |
|---|---|
| **From:** | sjohnson sljlaw702.com <sjohnson@sljlaw702.com> |
| **Sent:** | Wednesday, May 31, 2023 10:19 AM |
| **To:** | Cami M. Perkins |
| **Cc:** | Victoria Agunos |
| **Subject:** | RE: Order Denying Application to Increase Bond for Prejudgment Attachment or Post Bond for Rent and Costs AND Miscellaneous Issues including future Court dates |

Cami – save it.  This will be handled in litigation.

**From:** Cami M. Perkins <cperkins@howardandhoward.com>
**Sent:** Wednesday, May 31, 2023 10:17 AM
**To:** sjohnson sljlaw702.com <sjohnson@sljlaw702.com>
**Cc:** Victoria Agunos <vagunos@howardandhoward.com>
**Subject:** RE: Order Denying Application to Increase Bond for Prejudgment Attachment or Post Bond for Rent and Costs AND Miscellaneous Issues including future Court dates

What I proposed was to help <u>your</u> client mitigate <u>their</u> responsibility for my clients' damages.  No problem though, it will all be dealt with post-closing in Plaintiffs' application for damages.  I further suggest you actually read the order granting summary judgment.  There is nothing contained therein pertaining to closing costs or financing.  When I addressed the severely heightened interest rates at the hearing on the motion for summary judgment, Judge Reynolds stated that he was not going to require that Defendants assist with those costs at that point in time.  Again, we will just deal with it in our application for damages.

Also, please send me a breakdown of what your clients have paid since March 31, 2022 in connection with the subject property – i.e. mortgage, property tax, insurance, etc.



**Cami M. Perkins**
Attorney and Counselor

3800 Howard Hughes Pkwy, STE 1000, Las Vegas, NV 89169
**D:** 702.667.4855 | **C:** 702.810.4132 | **F:** 702.567.1568
cperkins@howardandhoward.com | Bio | vCard | LinkedIn

NOTICE: Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

**From:** Shawanna L. Johnson, Esq. <<u>sjohnson@sljlaw702.com</u>>
**Sent:** Thursday, May 25, 2023 1:47 PM
**To:** Cami M. Perkins <<u>cperkins@howardandhoward.com</u>>
**Cc:** Victoria Agunos <<u>vagunos@howardandhoward.com</u>>
**Subject:** Re: Order Denying Application to Increase Bond for Prejudgment Attachment or Post Bond for Rent and Costs AND Miscellaneous Issues including future Court dates

**CAUTION:** EXTERNAL EMAIL

Confirmed with my clients. They will not be offering or helping your client with anything related to the closing costs or financing. This is also what Judge Reynolds ordered.

I have already sent information to title so if everything is actually in order they have all necessary information.

Shawanna L. Johnson, Esq.
Law Offices of Shawanna L. Johnson
3311 S. Rainbow Blvd., Suite 144
Las Vegas, NV 89146
Tel: 702-755-6949
Fax: 702-294-2229
sjohnson@sljlaw702.com

On May 25, 2023, at 10:33 AM, Cami M. Perkins <cperkins@howardandhoward.com> wrote:

Dear Shawanna,

Attached please find the proposed ORDER DENYING DEFENDANTS' APPLICATION TO INCREASE BOND FOR PREJUDGMENT ATTACHMENT AND/OR POST ADDITIONAL BOND FOR RENT AND COSTS. As the other order for Department 4 that I sent, I would really like to get this order over to the Court prior to the long holiday weekend. Please confirm if I have your authorization to attach your electronic signature.

In addition, there was a status check re: trial readiness in this case yesterday. Maybe it was not on your calendar as it was on my calendar for 10:30 but apparently was called at 9:00 and the Court said that you did not appear at 9:00 either. In any case, due to the June 3, 2023 closing date, the Court kicked everything out by 90 days. We now have calendar call on September 27, 2023 at 9:00 a.m., and the bench trial stack starting on October 9, 2023.

Last, as I have outlined in several of our last filings, the damages caused by your client for failing to close on March 31, 2022 are substantial. I do not want to get into an argument about this as I am trying to be realistic and practical and offer some solutions in the short-term. Per the loan officer, the interest rate on the loan that was supposed to close on March 31, 2022 (the "Initial Loan") was 5%. Over the life of the 30 year loan, Plaintiffs would have paid $425,246 in interest. At today's interest rate, even with better credit scores, the interest rate for the loan (the "Current Loan") is 7.625%, and that is with charging 2 points ($9,426). Over the life of the Current Loan, Plaintiffs will pay interest in the amount of $705,914, for a different of $280,668 plus the $9,426 charged to buy down the rate. This makes the damages based on the interest rate alone **$290,094**. This does not even include the additional costs to close now (additional appraisal), repairs to the home argument which I know you disagree with, etc. Regardless, we can all agree it is substantial and I think there is a very strong likelihood we will be awarded this amount in damages. Even if your client is awarded damages for past unpaid rent, I do not think the amount will be more than $1,300 per month, which would be February 2022 through May 2023 (16 months at $1,300 = $20,800). I also think we have a strong equitable argument that the house was equitably my clients' home the entire time and no rent was due so all that your client would be entitled to under an unjust enrichment theory is what they paid out of pocket for their mortgage, insurance, and property taxes (I believe my client pays all utilities but you can correct me if I'm wrong).

2

In any case, according to the Lender, my clients can buy down the rate, but only to a rate of 5.5% maximum under lender guidelines (because rates have gone up so much). The cost to do so will be approximately $25K (the lender is crunching the numbers – this amount is approximately). The Lender called me this morning and said that under the law, the Seller is allowed to give a "credit" at closing up to 6% of the purchase price, which could be used to buy down the current interest rate. Six percent of the purchase price is equal to $28,800. My proposal based on where we are at is to request that Seller give a credit at closing in the amount required by the Lender to buy down the rate to the maximum amount allowed to get it as close to the 5% it was under the Initial Loan (which I understand the maximum lowest will be 5.5%). Otherwise, if the rate is not bought down, the damages are going to enormous as outlined above. I am making this proposal in order to help mitigate your clients' exposure on the damages (i.e. a damage award of $290,094 based on the interest rate difference versus much less than that if the rate is bought down via a Seller credit at closing).

<image002.png>

We can discuss if you would like but I need an answer on this idea/proposal ASAP (like today) because Buyers are getting their funds together for closing and everything else lined up, plus it's a holiday weekend. Thanks.

<hh_logo_0f1dbcb0-80ba-4943-b445-368a57555dd0.png>    **Cami M. Perkins**
Attorney and Counselor

3800 Howard Hughes Pkwy, STE 1000, Las Vegas, NV 89169
**D:** 702.667.4855  |  **C:** 702.810.4132  |  **F:** 702.567.1568
cperkins@howardandhoward.com  |  Bio  |  vCard  |  LinkedIn

NOTICE: Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

<Order re Application to Increase Bond for Prejudment Attachment or Post Additional Bond for Rent and Costs 4856-3830-7174 v.1.docx>

## Cami M. Perkins

| | |
|---|---|
| **From:** | sjohnson sljlaw702.com <sjohnson@sljlaw702.com> |
| **Sent:** | Thursday, May 25, 2023 10:53 AM |
| **To:** | Cami M. Perkins |
| **Cc:** | Victoria Agunos |
| **Subject:** | Re: Order Denying Application to Increase Bond for Prejudgment Attachment or Post Bond for Rent and Costs AND Miscellaneous Issues including future Court dates |
| **Attachments:** | Order re Application to Increase Bond for Prejudment Attachment or Post Additional Bond for Rent and Costs 4856-3830-7174 v.1.docx |

**CAUTION:** EXTERNAL EMAIL

I'll review these orders in due course but won't be rushed.

I'll pass this to my clients but I can pretty much tell you it will be rejected. You don't have a claim for damages and specific performance - you get one or the other. Your client breached several duties and agreements herself and this idea that she would only have to pay $1,300 per month - a contract price for a contract she no longer had - defies logic.  Her bad faith litigation and damages she caused by abusing the process will cost her any recovery.

So don't count on a settlement.  Most of this will likely end up in the Supreme Court so it is what it is. But I'll share it with my clients.

Shawanna L. Johnson, Esq.
Law Offices of Shawanna L. Johnson
3311 S. Rainbow Blvd., Suite 144
Las Vegas, NV 89146
Tel: 702-755-6949
Fax: 702-294-2229
sjohnson@sljlaw702.com


On May 25, 2023, at 10:33 AM, Cami M. Perkins <cperkins@howardandhoward.com> wrote:


Dear Shawanna,

Attached please find the proposed ORDER DENYING DEFENDANTS' APPLICATION TO INCREASE BOND FOR PREJUDGMENT ATTACHMENT AND/OR POST ADDITIONAL BOND FOR RENT AND COSTS.  As the other order for Department 4 that I sent, I would really like to get this order over to the Court prior to the long holiday weekend.  Please confirm if I have your authorization to attach your electronic signature.

In addition, there was a status check re: trial readiness in this case yesterday.  Maybe it was not on your calendar as it was on my calendar for 10:30 but apparently was called at 9:00 and the Court said that you did not appear at 9:00 either.  In any case, due to the June 3, 2023 closing date, the Court kicked everything out by 90 days.  We now have calendar call on September 27, 2023 at 9:00 a.m., and the bench trial stack starting on October 9, 2023.

Last, as I have outlined in several of our last filings, the damages caused by your client for failing to close on March 31, 2022 are substantial. I do not want to get into an argument about this as I am trying to be realistic and practical and offer some solutions in the short-term. Per the loan officer, the interest rate on the loan that was supposed to close on March 31, 2022 (the "Initial Loan") was 5%. Over the life of the 30 year loan, Plaintiffs would have paid $425,246 in interest. At today's interest rate, even with better credit scores, the interest rate for the loan (the "Current Loan") is 7.625%, and that is with charging 2 points ($9,426). Over the life of the Current Loan, Plaintiffs will pay interest in the amount of $705,914, for a different of $280,668 plus the $9,426 charged to buy down the rate. This makes the damages based on the interest rate alone **$290,094**. This does not even include the additional costs to close now (additional appraisal), repairs to the home argument which I know you disagree with, etc. Regardless, we can all agree it is substantial and I think there is a very strong likelihood we will be awarded this amount in damages. Even if your client is awarded damages for past unpaid rent, I do not think the amount will be more than $1,300 per month, which would be February 2022 through May 2023 (16 months at $1,300 = $20,800). I also think we have a strong equitable argument that the house was equitably my clients' home the entire time and no rent was due so all that your client would be entitled to under an unjust enrichment theory is what they paid out of pocket for their mortgage, insurance, and property taxes (I believe my client pays all utilities but you can correct me if I'm wrong).

In any case, according to the Lender, my clients can buy down the rate, but only to a rate of 5.5% maximum under lender guidelines (because rates have gone up so much). The cost to do so will be approximately $25K (the lender is crunching the numbers – this amount is approximately). The Lender called me this morning and said that under the law, the Seller is allowed to give a "credit" at closing up to 6% of the purchase price, which could be used to buy down the current interest rate. Six percent of the purchase price is equal to $28,800. My proposal based on where we are at is to request that Seller give a credit at closing in the amount required by the Lender to buy down the rate to the maximum amount allowed to get it as close to the 5% it was under the Initial Loan (which I understand the maximum lowest will be 5.5%). Otherwise, if the rate is not bought down, the damages are going to enormous as outlined above. I am making this proposal in order to help mitigate your clients' exposure on the damages (i.e. a damage award of $290,094 based on the interest rate difference versus much less than that if the rate is bought down via a Seller credit at closing).

| | |
|---|---|
| **Total Interest at 5.000%** | 425,246 |
| **Total Interest at 7.625%\*** | 705,914 |
| **Increase in Interest Expense** | **280,668** |

\* Highest rate available; would need to charge 2.0%

We can discuss if you would like but I need an answer on this idea/proposal ASAP (like today) because Buyers are getting their funds together for closing and everything else lined up, plus it's a holiday weekend. Thanks.



INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

EXHIBIT 4



 Equity Title of Nevada

Order No. 22-WSS-23486 1st Amended

# PRELIMINARY REPORT

**UNDERWRITER:** Real Advantage Title Insurance Company

| | |
|---|---|
| Escrow Officer: Wendy S Shaw<br>Equity Title of Nevada<br>Address: 10777 West Twain Avenue<br>Suite 105<br>Las Vegas, NV 89135<br>Phone: (702) 462-6000<br>Email: wendys@equitynv.com | Title Officer: Brenda Durant<br>Equity Title of Nevada<br>2475 Village View Dr., Suite 250<br>Henderson, Nevada 89074<br>Phone: (702) 432-1111<br>Email:Brendad@equitynv.com |

**BUYER/BORROWER:** Kathleen S. Prasad and Anjani Shandil
**PURCHASE PRICE:** $480,000.00
**LOAN AMOUNT:** $471,306.00
**PROPOSED LENDER:** Luminate Home Loans, Inc ,
ISAOA/ATIMA
**LOAN #:** 23209329

**PROPERTY ADDRESS:** 36 Vallejo Verde Street
Henderson, NV 89012

In response to the above referenced application for a policy of title insurance, Equity Title of Nevada hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception below or not excluded from coverage pursuant to the printed schedules, conditions and stipulations of said policy forms.

The printed Covered Risks, Exclusions from Coverage and Standard Coverage Exceptions of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the 2013 ALTA Homeowner's Policy of Title Insurance which establishes a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available upon request from the office which issued this report.

Please read the Exceptions to Coverage shown or referred to in Schedule B of this report and the Exclusions from Coverage and Standard Coverage Exceptions set forth in Exhibit B of this report carefully. They are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered. It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land. This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a binder or commitment should be requested.

**Dated 16th day of May, 2023 at 7:30 AM**

Brenda Durant

**Brenda Durant, Title Officer**

1

Order No. 22-WSS-23486 1st Amended

# SCHEDULE A

**THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS**

**fee simple**

**TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:**

**Raul Tarin and Ofelia Valencia, husband and wife, as joint tenants**

**THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF CLARK, STATE OF NEVADA, AND IS DESCRIBED AS FOLLOWS:**

**Lot Thirty-Eight (38) in Block Two (2) of LA ENTRADA UNIT 1, as shown by map thereof on File in Book 86 of Plats, Page 9, in the Office of the County Recorder of Clark County, Nevada, and as amended by Certificate of Amendment recorded November 30, 1998 in Book 981130 as Instrument No. 00672 of Official Records, Clark County, Nevada Records.**

2

Order No. 22-WSS-23486 1st Amended

## SCHEDULE B

**AT THE DATE HEREOF EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS CONTAINED IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or the public records.

2. Any facts, rights, interests, or claims which are not shown by public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

5. (a) Unpatented mining claims; (b) Reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) Water rights, claims or title to water, whether or not the matters excepted under (a),(b) or (c) are shown by the public records.

6. Any lien or right to a lien, for services, labor or materials heretofore or hereafter furnished, imposed by law and not shown by the public records.

7. Note: The above exceptions 1 through 6 will not appear on extended coverage title policies.

8. State, County and/or City taxes for the fiscal year 2022-2023 are paid in full in the total amount of $2,252.85.
   APN 178-14-711-022
   For further account information, please visit trweb.co.clark.nv.us

9. The Lien, if any, of supplemental taxes, assessed pursuant to the provisions of the 1983 Nevada Legislature under Nevada Revised Statutes No. 361.260.

10. The herein described property lies within the boundaries of the Clark County Sanitation District and the Las Vegas Valley Water District, and is subject to any and all fees that may be due by reason of said Districts.

11. Any Special Assessments which may be due and payable, and which are not assessed through the Clark County Treasurer's Office and are being billed by the entity where the Parcel is located.

12. Water rights, claims or title to water, whether or not shown by the public record.

13. Mineral rights, reservations, easements and exclusions in patent from the United States of America.
    Recorded  :  October 24, 1941 in Book 29, Page 129-130 of Deeds

14. The terms, covenants, conditions and provisions as contained in an instrument, entitled "B.M.I Annexation"
    Recorded  :  July 08, 1994 in Book 940708
    Document No.  :  00910, Official Records.

15. Covenants, conditions and restrictions (but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons) as set forth in the document
    Recorded  :  December 01, 1994 in Book 941201
    Document No.  :  00728 Official Records.

Order No. 22-WSS-23486 1st Amended

16. Dedications and Easements as indicated or delineated on the Plat of said Subdivision on file in Book 79 of Plats, Page 3, Official Records.

17. Covenants, conditions and restrictions (but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons) as set forth in the document
Recorded    :    December 10, 1997 in Book 971210
Document No.   :    01266 Official Records.

18. Dedications and Easements as indicated or delineated on the Plat of said Subdivision on file in Book 86 of Plats, Page 9, Official Records.

Download document {document name} in the official records

19. Covenants, Conditions, Restrictions and Easements (but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent said covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons) contained in Declaration of Restrictions and Easements.
Recorded    :    February 05, 1999 in Book 990205
Document No.   :    00685, Official Records.

20. A Deed of Trust to secure an indebtedness of the amount stated herein below
Dated              : April 24, 2018
Amount           : $202,800.00
Trustor            : Ofelia Tarin FKA Ofelia Valencia and Raul Tarin, wife and husband
Trustee            : Old Republic National Title Insurance Company
Beneficiary       : Quicken Loans Inc., (MERS)
Recorded         : on April 25, 2018 as Instrument #20180425-0002057 in the official records

21. An Action commenced in the Eighth Judicial District Court,
Entitled           : Lis Pendens
Plaintiff           : Kathleen Prasad and Anjanie Shandill
Defendant        : Raul Tarin Nevarez and Ofelia Tarin
Case No.          : A-22-851495-C
Purpose : possession of real property
Entered            : April 22, 2022
Recorded          : on April 22, 2022 as Instrument #20220422-0001631 in the official records

22. NOTE: Title is to vest in the following party and when so vested will be presumptively subject to the community interest of the spouse, if married, and any matters that may be disclosed by a search of the records against the name of said spouse.
Party               : Kathleen S. Prasad and Anjani Shandil

23. Rights and claims of parties in possession by reason of unrecorded leases, if any, that would be disclosed by an inquiry of the parties, or by an inspection of said land.

24. REQUIREMENT: An inspection of the subject property is required prior to closing. Additional exceptions and/or requirements may be added due to facts, rights, interests or claims which are ascertained thereby. Should the inspection disclose construction currently in progress or recently completed, be advised that the final title insurance policy(ies) may exclude coverage against unrecorded mechanic's liens which may arise therefrom.

25. NOTE: This transaction may be subject to a Federal Regulation. Information necessary to comply with the Federal Regulation must be provided prior to closing. This transaction will not be insured until this information is submitted, reviewed and found to be complete.

NOTE: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

4

Order No. 22-WSS-23486 1st Amended

Order No. 22-WSS-23486 1st Amended

# INFORMATIONAL NOTES

## 24 Month Chain of Title

The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

1. A deed from Beazer Homes Holdings Corp., a Delaware Corporation to Raul Tarin and Ofelia Valencia, husband and wife, as joint tenants dated 02/25/1999 and recorded on 06/29/1999 in Book 990629 at Page 000088 in the Official Records of the Equity Title of Nevada.

## ADDRESS SUPPLEMENT

According to the public records, the property described in this report has a physical address of:

**36 Vallejo Verde Street**
**Henderson, NV 89012**

No liability is assumed as to the accuracy of said physical address.

If a lender's policy of title insurance is contemplated in this transaction, a requested CLTA 116-06, CLTA 116.2-06, ALTA 22-06, or ALTA 22.1-06 endorsement attached thereto will reflect the following information:

There is located on said land, a

**Single Family Residence**

commonly known as

**36 Vallejo Verde Street, Henderson, NV 89012**

6

Order No. 22-WSS-23486 1st Amended

## AVAILABILITY OF 2013 ALTA HOMEOWNERS POLICY OF TITLE INSURANCE

[true]  This transaction appears to qualify for the issuance of the 2013 ALTA Homeowners Policy of Title Insurance; or
[]  This transaction **DOES NOT** appear to qualify for the issuance of the 2013 ALTA Homeowners Policy of Title Insurance.

Please ask your Title or Escrow Officer if you have questions regarding the 2013 ALTA Homeowners Policy of Title Insurance.

## TO AVOID DELAYS IN CLOSING, PLEASE INFORM YOUR TITLE OR ESCROW OFFICER IMMEDIATELY IF ANY OF THE FOLLOWING CIRCUMSTANCES APPLY:

A.  The Seller(s) listed on the purchase agreement are not identical to the vested owner(s) listed on the title report.
B.  The Buyer(s) listed on the purchase agreement are not identical to the Buyer(s) listed on the title report.
C.  A Seller, Buyer or Borrower is currently subject to probate, guardianship, bankruptcy or divorce proceedings which are not reflected in the title report.
D.  A Seller, Buyer or Borrower either has or intends to delegate authority to execute required documents to another person or entity by Power of Attorney.
E.  One or more of the vested owners listed on the title report (including a trustee of a trust) is deceased, incapacitated, incompetent, or is otherwise unable to execute the required documents.
F.  The property is subject to a Deed of Trust or Mortgage which is not reflected in the title report.
G.  The transaction involves the transfer of a mobile home.
H.  The transaction includes a transfer of water, water rights, minerals or mineral rights.
I.  A Seller, Buyer or Borrower intends to execute any required documents outside of an office of Equity Title of Nevada.
J.  Construction, repair, remodeling is either in process or recently completed upon the subject property.

## IMPORTANT NOTICE TO PROPOSED LENDERS FOR REAL PROPERTY LOCATED WITHIN A COMMON INTEREST COMMUNITY

[]  If this box is checked, the land described herein lies within a Common Interest Community and is subject to the imposition of a lien for assessments under NRS 116.3116.

Nevada Revised Statutes Section 116.3116 provides for "liens against units for assessments" and their priority over all other liens and encumbrances on a unit, including a "super-priority" over first deeds of trust – to the extent of assessment for the 9 months preceding commencement of an HOA lien foreclosure.

In the past, the majority of Nevada courts have taken the position that a foreclosure of an HOA lien did not extinguish a previously-recorded deed of trust. However a Nevada Supreme Court decision - SFR Investments Pool 1, LLC, v. U.S. Bank, N.A., 130 Nev., Advance Opinion 75 (Sept. 18, 2014) concluded that "NRS 116.3116(2) gives a Common Interest Community a true super-priority lien, proper foreclosure of which will extinguish a first deed of trust". The court also concluded that any "mortgage protection" language which may appear in the recorded Declaration of Covenants, Conditions and Restrictions (CC&Rs) is void and/or unenforceable with regard to the statutory priority of HOA assessments.

As a result, **no endorsement to a lender's policy of title insurance will be issued** which provides the insured lender with either a.) an assurance that HOA assessments are subordinate to the lien of the insured mortgage, or b.) an assurance that a violation of the CC&R will not impair the lien of the insured mortgage. The list of such prohibited endorsements includes:

ALTA 4-06 (CLTA 115.1)
ALTA 5-06 (CLTA 115.2)

7

Order No. 22-WSS-23486 1st Amended

Any CLTA 100 series endorsement (including the CLTA 100.13 endorsement); and
Any ALTA 9 series endorsement (with the sole exception of the ALTA 9.10-06)

The following endorsements may be issued in lieu of the prohibited endorsements listed above:

**ALTA 4.1-06** (Condominium) (Revised 10-16-08)
**ALTA 5.1-06** (Planned Unit Development) (Revised 10-16-08)
**ALTA 9.10-06** (Restrictions, Encroachments, Minerals-Current Violations-Loan Policy) (Adopted 4-2-13)

Coverage provided to the insured lender under these endorsements is limited to loss or damage caused by the failure of HOA assessments to be paid current as of the date of the title policy. Sample versions of these endorsement are available and will be provided  upon request.

## NOTICE OF AVAILABLE DISCOUNTS TO TITLE INSURANCE FEES

Only one of the following discounts may be applied toward the cost of a policy of title insurance, even in cases where a customer qualifies for more than one discount.

[] **SHORT TERM RATE:** Applies to owners title insurance policies only. A **20%** discount shall be applied to the cost of an owners policy of title insurance, if a prior owners policy of title insurance on the same property has been issued within the past 3 years.

Note: If the box above is checked, the herein described property appears to qualify for a short-term rate discount.

**INVESTOR RATE:** This rate is available to individuals, groups of individuals or an entity engaged in the acquisition and/or sale of residential properties for the purpose of generating income or profit ("Investor"). In order to qualify for the discount, the Investor must a.) request the discount and b.) provide reasonable proof or the Company has confirmed that the Investor currently owns or has previously sold for full value three (3) or more investment properties located with the State of Nevada within the preceding 12 months. The rate applies to an owners policy of title insurance or an interim binder to insure a future resale of an existing 1-4 family residential property only, and can only be applied to those premiums which are actually paid by the Investor. The charge for an owners policy of title insurance or an interim binder under this Section shall be **70%** of the full premium amount otherwise applicable.

## NOTICE OF AVAILABLE DISCOUNTS TO ESCROW FEES

The discounts shown below are applicable to sale escrows only. Only one escrow rate discount per transaction shall be applied to the Buyer's portion of the applicable escrow fee, even in cases where a customer qualifies for more than one discount. Only one escrow rate discount per transaction shall be applied to the Seller's portion of the applicable escrow fee, even in cases where a customer qualifies for more than one discount.

A. **SENIOR CITIZEN DISCOUNT**: A buyer or seller who is a senior citizen (55 years of age and over) is entitled to a **25%** discount of his/her normal portion of the escrow fee for residential owner-occupied property. The customer must request the discount and must provide a valid identification.

B. **ACTIVE MILITARY PERSONNEL DISCOUNT**: A buyer or seller enlisted in active duty with the U.S. military is entitled to a **25%** discount on his/her normal portion of the escrow fee for residential owner-occupied property. The customer must request the discount and must provide a valid military identification.

C. **TEACHER DISCOUNT**: A buyer or seller employed as a full-time teacher in a public school within Clark County, Nevada is entitled to a **25%** discount on his/her normal portion of the escrow fee for residential owner-occupied property. The customer must request the discount and must provide satisfactory proof of employment as a full-time teacher.

Order No. 22-WSS-23486 1st Amended

D.  **ACTIVE POLICE OFFICER DISCOUNT**: A buyer or seller employed as active duty police officer is entitled to a **25%** discount on his/her normal portion of the escrow fee for residential owner-occupied property. The customer must request the discount and must provide satisfactory proof of employment as active duty police officer.

E.  **EQUITY ADVANTAGE PROGRAM ("EAP"):** Provided that a Listing Agent agrees to specify in the MLS listing **"Title work begun at Equity Title - 30% Escrow Fee savings to Buyer and Seller when closed at Equity Title"**, said Listing Agent will be provided a full Preliminary Title Report prior to obtaining a Buyer. The Buyer and Seller will each receive a **30%** discount off their respective portion of the basic sale escrow fee at closing. Does not include REO or Short-Sale transactions.

## STANDARD RECORDING REQUIREMENTS – NEVADA

Documents submitted for recording must meet the each of the following standard requirements. Failure to comply with any of these standard recording requirements may result in the document being rejected for recording.

**PARCEL NUMBER:** The current assessor parcel number(s) of the subject real property must appear on the top left corner of the first page (NRS 111.312).

**LEGIBILITY:** Documents must be clearly readable and capable of producing a legible microfilm record. (NRS 247.120)

**NAMES UNDER SIGNATURE:** Names must be printed or typed under all signatures (except notaries with a legible notary stamp, and witnesses). (NRS 247.190)

**RETURN DOCUMENT TO:** A "Return Document To" name and address must be indicated and clearly identified on each document (NRS 111.312)

**MAIL TAX STATEMENTS TO:** The name and address of the person(s) to whom a statement of taxes assessed is to be mailed must appear on any document transferring title (NRS 111.312)

**GRANTEE NAME AND ADDRESS:** Grantee name and address must appear on any documents that transfers title. (NRS 111.312).

**LEGAL DESCRIPTION**: A legal description of the subject property must appear on all documents which transfer title to real property. If the legal description is in metes and bounds, the document must indicate the name and address of the person who prepared the legal description or the recording information of a prior recorded document in which said metes and bounds legal description previously appeared. (NRS 111.312).

**NOTARY ACKNOWLEDGMENT:** The signatures appearing on any document which conveys or affects the title to real property must be properly acknowledged by a Notary Public (NRS 247.120, NRS 111.240, NRS 111.310)

**_Note:_** *If an acknowledgment is to be taken outside of the United States, additional requirements may apply. Please contact your title officer or escrow officer prior to the execution of any such document.*

9

Order No. 22-WSS-23486 1st Amended

## RECORDING FEES AND TRANSFER TAX
## CLARK COUNTY, NEVADA
## (Effective January 1, 2020)

| Official Records-Standard Recordings | Fees: | NRS Reference: | County Ordinance: |
|---|---|---|---|
| Fee Per Document | $42.00 | NRS 247.305 | Title 2, Chapter 2.32 |
| | | | |
| Notice of Default/Breach and Election to Sell Under a Deed of Trust | $250.00 + recording fee | NRS 107.080 | |

| UCC | Fees: | NRS Reference: |
|---|---|---|
| Up to 2 pages | $60.00 | NRS 104.9525 |
| 3 – 20 pages | $90.00 | NRS 104.9525 |
| Each additional page over 20 pages | $2.00 | NRS 104.9525 |
| Each additional debtor | $2.00 | NRS 104.9525 |
| UCC Copies per page | $2.00 | NRS 104.9525 |

*No charge for Declaration of Value Form.

| Real Property Transfer Tax | $2.55 per $500 of value | NRS 375.020 |
|---|---|---|

Order No. 22-WSS-23486 1st Amended

# Privacy Policy
## Orange Coast Title Family of Companies

**We are Committed to Safeguarding Customer Information**

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information that you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**

This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

**Right to Know**

You have the right to know:

- The categories of **personal information** we have collected about or from you;
- The categories of sources from which we collected your **personal information**;
- The business or commercial purpose for collecting or sharing your **personal information**;
- The categories of third parties with whom we have shared your **personal information**; and
- The specific pieces of your **personal information** we have collected.

*Process to Submit a Request.* To submit a verified request for this information go to https://www.titleadvantage.com/CCPAIntakeForm.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by going to https://www.titleadvantage.com/CCPAIntakeForm.htm or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure your **personal information** is not disclosed to unauthorized parties, and to protect against fraud, we will verify your identity before responding to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the **personal information** requested, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right of Deletion**

You have a right to request that we delete the **personal information** we have collected from or about you.

*Process to Submit a Request.* To submit a verified request to delete go to https://www.titleadvantage.com/CCPAIntakeForm.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by going to the site or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure we do not inadvertently delete your **personal information** based on a fraudulent request, we will verify your identity before we respond to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the **personal information** requested to be deleted, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right to Opt-Out**

We do not sell your **personal information** to third parties, and do not plan to do so in the future.

**Right of Non-Discrimination**

You have a right to exercise your rights under this Privacy Policy without suffering discrimination. Accordingly, the Orange Coast Title Family of Companies will not discriminate against you in any way if you choose to exercise your rights under this Policy.

**California Minors**

If you are a California resident under the age of 18, *California Business and Professions Code §22581* permits you to request and obtain removal of content or information you have publicly posted on any of our Applications or Websites. To make such a request, please send an email with a detailed description of the specific content or information to dataprivacy@octitle.com. Please be aware that such a request does not ensure complete or comprehensive removal of the content or information you have posted and there may be circumstances in which the law does not require or allow removal even if requested.

**Collection Notice**

The following is a list of the categories of **personal information** we may have collected about consumers in the twelve months preceding the date this Privacy Policy was last updated, including the business or commercial purpose for said collection, the categories of sources from which we may have collected the **personal information**, and the categories of third parties with whom we may have shared the **personal information**:

11

Order No. 22-WSS-23486 1st Amended

**Categories of Personal Information Collected**

The categories of **personal information** we have collected include, but may not be limited to:

- real name
- signature
- alias
- SSN
- physical characteristics or description
  (including protected characteristics under federal or state law)
- address
- telephone number
- passport number
- driver's license number
- state identification card number

- IP address
- policy number
- file number
- employment history
- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

**Categories of Sources**

Categories of sources from which we've collected **personal information** include, but may not be limited to:

- the consumer directly
- public records
- governmental entities

- non-affiliated third parties
- affiliated third parties

**Business Purpose for Collection**

The business purposes for which we've collected **personal information** include, but may not be limited to:

- completing a transaction for our Products
- verifying eligibility for employment
- facilitating employment

- performing services on behalf of affiliated and non-affiliated third parties
- protecting against malicious, deceptive, fraudulent, or illegal activity

**Categories of Third Parties Shared**

The categories of third parties with whom we've shared **personal information** include, but may not be limited to:

- service providers
- government entities
- operating systems and platforms

- non-affiliated third parties
- affiliated third parties

**Sale Notice**

We have not sold the **personal information** of consumers to any third party in the twelve months preceding the date this Privacy Notice was last updated, and we have no plans to sell such information in the future. We also do not, and will not sell the **personal information** of minors under sixteen years of age without affirmative authorization.

**Disclosure Notice**

The following is a list of the categories of **personal information** of consumers we may have disclosed for a business purpose in the twelve months preceding the date this Privacy Notice was last updated:

- real name
- signature
- alias
- SSN
- physical characteristics or description
  (including protected characteristics under federal or state law)
- address
- telephone number
- passport number
- driver's license number
- state identification card number

- IP address
- policy number
- file number
- employment history
- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

**Former Customers**

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We

12

Order No. 22-WSS-23486 1st Amended

will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

Please be aware that Orange Coast Title Company and its Affiliated Companies maintain high standards to safeguard nonpublic, personal information, and do not rent or sell such information. Please note, however, that unless you opt out in writing, our Affiliated Companies and Service Providers will have access to the information in our files.

**Other Important Information**

We reserve the right to modify or supplement this Privacy Policy at any time. If our Privacy Policy changes, we will post the updated Privacy Policy on our website before the new policy becomes effective.

**Revised 2/20/20**

Order No. 22-WSS-23486 1st Amended

## Exhibit A

Lot Thirty-Eight (38) in Block Two (2) of LA ENTRADA UNIT 1, as shown by map thereof on File in Book 86 of Plats, Page 9, in the Office of the County Recorder of Clark County, Nevada, and as amended by Certificate of Amendment recorded November 30, 1998 in Book 981130 as Instrument No. 00672 of Official Records, Clark County, Nevada Records.

Order No. 22-WSS-23486 1st Amended

# Exhibit B

## ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-2-13)

## COVERED RISKS

1. Someone else owns an interest in Your Title.
2. Someone else has rights affecting Your Title because of leases, contracts, or options.
3. Someone else claims to have rights affecting Your Title because of forgery or impersonation.
4. Someone else has an Easement on the Land.
5. Someone else has a right to limit Your use of the Land.
6. Your Title is defective. Some of these defects are:
   a. Someone else's failure to have authorized a transfer or conveyance of your Title.
   b. Someone else's failure to create a valid document by electronic means.
   c. A document upon which Your Title is based is invalid because it was not properly signed, sealed, acknowledged, delivered or recorded.
   d. A document upon which Your Title is based was signed using a falsified, expired, or otherwise invalid power of attorney.
   e. A document upon which Your Title is based was not properly filed, recorded, or indexed in the Public Records.
   f. A defective judicial or administrative proceeding.
7. Any of Covered Risks 1 through 6 occurring after the Policy Date.
8. Someone else has a lien on Your Title, including a:
   a. lien of real estate taxes or assessments imposed on Your Title by a governmental authority that are due or payable, but unpaid;
   b. Mortgage;
   c. judgment, state or federal tax lien;
   d. charge by a homeowner's or condominium association; or
   e. lien, occurring before or after the Policy Date, for labor and material furnished before the Policy Date.
9. Someone else has an encumbrance on Your Title.
10. Someone else claims to have rights affecting Your Title because of fraud, duress, incompetency or incapacity.
11. You do not have actual vehicular and pedestrian access to and from the Land, based upon a legal right.
12. You are forced to correct or remove an existing violation of any covenant, condition or restriction affecting the Land, even if the covenant, condition or restriction is excepted in Schedule B. However, You are not covered for any violation that relates to:
    a. any obligation to perform maintenance or repair on the Land; or
    b. environmental protection of any kind, including hazardous or toxic conditions or substances
    unless there is a notice recorded in the Public Records, describing any part of the Land, claiming a violation exists. Our liability for this Covered Risk is limited to the extent of the violation stated in that notice.
13. Your Title is lost or taken because of a violation of any covenant, condition or restriction, which occurred before You acquired Your Title, even if the covenant, condition or restriction is excepted in Schedule B.
14. The violation or enforcement of those portions of any law or government regulation concerning:
    a. building;
    b. zoning;
    c. land use;
    d. improvements on the Land;
    e. land division; or
    f. environmental protection,
    if there is a notice recorded in the Public Records, describing any part of the Land, claiming a violation exists or declaring the intention to enforce the law or regulation. Our liability for this Covered Risk is limited to the extent of the violation or enforcement stated in that notice.
15. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 14 if there is a notice recorded in the Public Records, describing any part of the Land, of the enforcement action or intention to bring an enforcement action. Our liability for this Covered Risk is limited to the extent of the enforcement action stated in that notice.
16. Because of an existing violation of a subdivision law or regulation affecting the Land:
    a. You are unable to obtain a building permit;
    b. You are required to correct or remove the violation; or
    c. someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it. *The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.*
17. You lose Your Title to any part of the Land because of the right to take the Land by condemning it, if:
    a. there is a notice of the exercise of the right recorded in the Public Records, describing any part of the Land; or
    b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.
18. You are forced to remove or remedy Your existing structures, or any part of them - other than boundary walls or fences - because any portion was built without obtaining a building permit from the proper government office. *The amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.*
19. You are forced to remove or remedy Your existing structures, or any part of them, because they violate an existing zoning law or zoning regulation. *If You are required to remedy any portion of Your existing structures, the amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.*
20. You cannot use the Land because use as a single-family residence violates an existing zoning law or zoning regulation.
21. You are forced to remove Your existing structures because they encroach onto Your neighbor's land. *If the encroaching structures are boundary walls or fences, the amount of Your insurance for this Covered Risk is subject to Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.*
22. Someone else has a legal right to, and does, refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it because Your neighbor's existing structures encroach onto the Land.
23. You are forced to remove Your existing structures which encroach onto an Easement or over a building set-back line, even if the Easement

15

Order No. 22-WSS-23486 1st Amended

or building set-back line is excepted in Schedule B.

24. Your existing structures are damaged because of the exercise of a right to maintain or use any Easement affecting the Land, even if the Easement is excepted in Schedule B.

25. Your existing improvements (or a replacement or modification made to them after the Policy Date), including lawns, shrubbery or trees, are damaged because of the future exercise of a right to use the surface of the Land for the extraction or development of minerals, water or any other substance, even if those rights are excepted or reserved from the description of the Land or excepted in Schedule B.

26. Someone else tries to enforce a discriminatory covenant, condition or restriction that they claim affects Your Title which is based upon race, color, religion, sex, handicap, familial status, or national origin.

27. A taxing authority assesses supplemental real estate taxes not previously assessed against the Land for any period before the Policy Date because of construction or a change of ownership or use that occurred before the Policy Date.

28. Your neighbor builds any structures after the Policy Date -- other than boundary walls or fences -- which encroach onto the Land.

29. Your Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.

30. Someone else owns an interest in Your Title because a court order invalidates a prior transfer of the title under federal bankruptcy, state insolvency, or similar creditors' rights laws.

31. The residence with the address shown in Schedule A is not located on the Land at the Policy Date.

32. The map, if any, attached to this Policy does not show the correct location of the Land according to the Public Records.

## EXCLUSIONS FROM COVERAGE

1. Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:
   a.  building
   b.  zoning
   c.  Land use
   d.  improvements on the Land
   e.  Land division
   f.  environmental protection
   This Exclusion does not limit the coverage described in Covered Risk 8a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:
   a.  that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   b.  that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
   c.  that result in no loss to You; or
   d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e, 25, 26, 27 or 28.

5. Failure to pay value for Your Title.

6. Lack of a right:
   a.  to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b.  in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.

9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

The Deductible Amount and Maximum Dollar Limit for Covered Risk 16, 18, 19 and 21 are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

16

Order No. 22-WSS-23486 1st Amended

## 2006 ALTA LOAN POLICY (06-17-06)

### COVERED RISKS

1.  Title being vested other than as stated in Schedule A.
2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
    (a)  A defect in the Title caused by
        (i)   forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
        (ii)  failure of any person or Entity to have authorized a transfer or conveyance;
        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
        (iv)  failure to perform those acts necessary to create a document by electronic means authorized by law;
        (v)   a document executed under a falsified, expired, or otherwise invalid power of attorney;
        (vi)  a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
        (vii) a defective judicial or administrative proceeding.
    (b)  The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
    (c)  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3.  Unmarketable Title.
4.  No right of access to and from the Land.
5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (a)  the occupancy, use, or enjoyment of the Land;
    (b)  the character, dimensions, or location of any improvement erected on the Land;
    (c)  the subdivision of land; or
    (d)  environmental protection
    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9.  The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage
    (a)  forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
    (b)  failure of any person or Entity to have authorized a transfer or conveyance;
    (c)  the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
    (d)  failure to perform those acts necessary to create a document by electronic means authorized by law;
    (e)  a document executed under a falsified, expired, or otherwise invalid power of attorney;
    (f)  a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
    (g)  a defective judicial or administrative proceeding.
10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.
11. The lack of priority of the lien of the Insured Mortgage upon the Title
    (a)  as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either
        (i)  contracted for or commenced on or before Date of Policy; or
        (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and
    (b)  over the lien of any assessments for street improvements under construction or completed at Date of Policy.
12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.
13. The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title
    (a)  resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
    (b)  because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
        (i)  to be timely, or
        (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

Order No. 22-WSS-23486 1st Amended

## EXCLUSIONS FROM COVERAGE

1.   (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   - (i)  the occupancy, use, or enjoyment of the Land;
   - (ii)  the character, dimensions, or location of any improvement erected on the Land;
   - (iii)  the subdivision of land; or
   - (iv)  environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
     (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   - (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
   - (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   - (c)  resulting in no loss or damage to the Insured Claimant;
   - (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   - (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   - (a)  a fraudulent conveyance or fraudulent transfer, or
   - (b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

This form of title insurance policy form may be issued to afford either Standard Coverage or Extended Coverage. The Standard Coverage version will include the following additional Exceptions to Coverage:

## STANDARD COVERAGE EXCEPTIONS

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien, for services, labor or materials heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

18

Order No. 22-WSS-23486 1st Amended

**2006 ALTA OWNER'S POLICY (06-17-06)**

**COVERED RISKS**

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
       (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
       (ii) failure of any person or Entity to have authorized a transfer or conveyance;
       (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
       (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
       (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
       (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
       (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
       (i) to be timely, or
       (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

**EXCLUSIONS FROM COVERAGE**

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
       (i) the occupancy, use, or enjoyment of the Land;
       (ii) the character, dimensions, or location of any improvement erected on the Land;
       (iii) the subdivision of land; or
       (iv) environmental protection;
       or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

19

Order No. 22-WSS-23486 1st Amended

This form of title insurance policy form may be issued to afford either Standard Coverage or Extended Coverage. The Standard Coverage version will include the following additional Exceptions to Coverage:

**STANDARD COVERAGE EXCEPTIONS**

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien, for services, labor or materials heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

20

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 5



INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

EXHIBIT 6



1  **ORDR**
Cami M. Perkins, Esq., Nevada Bar No. 9149
2  Karson D. Bright, Esq., Nevada Bar No. 14837
**Howard & Howard Attorneys PLLC**
3  3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
4  Telephone: (702) 257-1483
Facsimile: (702) 567-1568
5  E-Mail: cp@h2law.com; kdb@h2law.com

6  *Attorneys for Plaintiffs/Counterdefendants*
*Kathleen Prasad and Anjani Shandill*
7
                    **DISTRICT COURT**
8
                **CLARK COUNTY, NEVADA**
9
10  KATHLEEN PRASAD, an individual, and     CASE NO.: A-22-85149-C
ANJANI SHANDILL, an individual,          DEPT NO.: 29
11
        Plaintiffs,                      **TEMPORARY RESTRAINING ORDER**
12
        vs.
13
RAUL TARIN NEVAREZ, an individual, and
14  OFELIA TARIN, an individual,
15          Defendants.

16      On June 1, 2023, Plaintiffs/Counter-Defendants, Kathleen Prasad and Ofelia Tarin's
17  ("Plaintiffs"), by and through their undersigned counsel of record, the law firm of HOWARD &
18  HOWARD, submitted their Plaintiffs' Emergency *Ex Parte* (With Notice) Application for
19  Temporary Restraining Order and, After Hearing, Application for Pre-Judgment Writ of
20  Attachment on Order Shortening Time  Based upon the Application, the exhibits and documents
21  on file, and the memorandum of points and authorities and exhibits filed herein, at this stage of
22  the proceedings the Court finds that:
23      1.    Summary judgment has already been granted in Plaintiffs' favor and therefore
24  Plaintiffs have already established a reasonable probability of success on the merits of their claims
25  against Defendants.
26      2.    Plaintiffs will suffer irreparable harm if injunctive relief is not granted.
27      3.    The balancing of harms weighs in favor of Plaintiffs.
28

**ORDER**

Good cause appearing, it is hereby:

      ORDERED that Plaintiffs Application for Temporary Restraining Order (With Notice) is GRANTED, and that a Temporary Restraining Order shall issue in favor of Plaintiffs and against Defendants.

      IT IS FURTHER ORDERED that Defendants, and any and all of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are hereby enjoined from engaging in any of the following activities:

      [   ] Defendants are hereby enjoined from receiving any proceeds from Equity Title or any other party or source related to the sale of the property located at 36 Vallejo Verde Steet, Henderson, NV 89012 (the "Property"), such proceeds to be held in escrow until further order of the Court;

      [   ] Defendants are hereby enjoined from utilizing any funds disbursed to them from the sale of the property located at 36 Vallejo Verde Steet, Henderson, NV 89012 (the "Property" until further order of the Court.

      IT IS FURTHER ORDERED that

      [   ] Plaintiffs shall not be required to post additional security with the Court Clerk, having already posted security in the amount of $25,000 which currently sits with the Court Clerk and constitutes sufficient security at this time

      [   ] Plaintiffs shall post security with the Court Clerk in the amount of $_____.

      IT IS FURTHER ORDERED that the hearing on Plaintiffs Application for Pre-Judgment Writ of Attachment shall be had in Department 29 beginning on the _____ day of _____, 2023, at the hour of _____ A.M./P.M. or as soon thereafter as counsel can be heard.

HOWARD & HOWARD ATTORNEYS PLLC

IT IS FURTHER ORDERED that any written opposition briefs shall be filed on or before

_____, 2023 and any reply briefs shall be filed on or before _____,

2020.

IT IS FURTHER ORDERED that this Temporary Restraining Order shall expire at the

conclusion of the Pre-Judgment Writ of Attachment Hearing, currently scheduled to begin on

_____, 2020, unless otherwise modified or extended by Order of the Court.

Because the temporary restraining order is issued with notice the time deadlines set forth in

N.R.C.P. 65(b) do not and shall not apply.

ISSUED this _____ day of June, 2023.


_____
DISTRICT COURT JUDGE

**Respectfully submitted by:**

HOWARD & HOWARD ATTORNEYS PLLC

*/s/ Cami M. Perkins*
Cami M. Perkins (#9149)
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
*Attorneys for Plaintiffs*

HOWARD & HOWARD ATTORNEYS PLLC

3 of 3